THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. TIMOTHY A. RANDLE, PLAINTIFF IN ERROR.

Argued May 5, 1942—Decided July 7, 1942.

Before Brogan, Chief Justice, and Justices Parker and Porter.

For the defendant in error, *John J. Breslin, Jr.,* Prosecutor of the Pleas (*Nicholas A. Carella,* of counsel).

For the plaintiff in error, *Joseph H. Gaudielle* (*James A. Major,* of counsel).

Per Curiam.

Plaintiff in error was convicted of a high misdemeanor, *i. e.,* assault with intent to commit rape. The entire record of the proceedings had upon the trial has been certified by the trial court and there is presented a list of specifications of causes for reversal. There are no assignments of error listed.

Four specifications for reversal are argued, viz., (1) that the trial court erred in refusing to direct a verdict of acquittal at the end of the states' case; (2) the trial court erred in refusing the witness, Blaurock, to be sworn and to testify on

the behalf of the defendant; (3) the trial judge erred in his charge to the jury; (4) the verdict is against the weight of the evidence.

There is no merit to the first point. No such motion—to direct an acquittal—is to be found in the record. A motion was made to dismiss the indictment, based on the proposition that the state had not sustained the burden of proof. As to this, we consider that the state had made out a case for the jury.

We find no merit in the third and fourth specifications. The court's charge to the jury in the particular complained of was not unreasonable comment. Nor is there any merit to the argument that the verdict was against the weight of the evidence. The defense in this case, a denial of the charge, was quite unconvincing and we think the jury was quite right in rejecting it.

The second specification, however, requires more discussion. The defendant intended to call some character witnesses. One testified. The second, a former township clerk of Washington Township, Steffen Olsen, testified to the excellent reputation of Randle, plaintiff in error, in the community for morality, honesty and truthfulness. The state's attorney cross-examined, as he was privileged to do, with an intent to show interest in or partiality toward the accused. We think sufficient interest and friendship was shown to neutralize the Olsen testimony. The defense then called Arthur Blaurock, a member of the governing body of Washington Township and former police commissioner thereof. The court inquired whether the witness was to testify to defendant's good reputation. On receiving an affirmative answer, the judge asked if the defendant's reputation was going to be disputed. The state's attorney replied that it was not. The court then directed counsel for the defense to call the names of the witnesses who would testify concerning the defendant's reputation in the community. Five additional names were called and we gather that those persons stood up as their names were called that they might be seen by the court and the jury. When Mr. Blaurock was called, although defense counsel stated he would like to have the witness testify, the

trial judge replied that he didn't think it was necessary; that he supposed "they are all going to say he [defendant] has enjoyed a good reputation." Defense counsel then said that the jury should have opportunity "to see and hear from these witnesses" to which the court replied: "* * * I have the right to limit the number of this type of witness." An exception was entered and signed and sealed. This ruling was harmful error. The court abused its discretion. We are enjoined by the statute (*N. J. S. A.* 2:195-16) to order a new trial if there appears, as here, a "denial of any matter by the court which was a matter of discretion, whether a bill of exceptions was settled, signed and sealed thereto, or error assigned thereon, or not * * *" if it resulted in manifest wrong or injury—as in this case it did. Whether the state intended to make an issue of the defendant's reputation or not was beside the point. The defendant had the right to call a reasonable number of witnesses, to attest his reputation, if he so desired. Assuming that the court has the right to limit the number of witnesses who were summoned to testify as to the reputation of the defendant on trial, in this case it appears that only two were heard. We consider this an unreasonable stricture on the defendant. Compare *State* v. *Baldanzo,* 106 *N. J. L.* 498.

The wife of the defendant was called as the next witness. She was asked by defense counsel how many children she had. An objection by the state's attorney was sustained. Counsel for the defendant persisted and said, "The purpose of this, your honor, is to show that a man living at home with his wife and family certainly cannot be thought to be the type of person to go out and do this" (the crime for which he was indicted). The court replied, "I think it is prejudicial and can't have any evidential weight. *Common experience tells me just the opposite.*" (Italics supplied.) The evidence, of course, was immaterial and had no place in the case but the comment of the judge was harmful to the defendant. This exchange between court and defense counsel continued as follows:

"Mr. Carlson: I don't know—some other people might have had that experience. I haven't.

"The court: It may be so. I have been sitting on this bench too long not to have any ideas such as that.

"Mr. Carlson: Very often men come in here, come in unjustly accused of crime.

"The court: *Very often in ninety-nine cases out of a hundred they are accused justly.*"   (Italics supplied.)

*         *         *         *         *         *         *

"I take exception to your honor's remarks." An exception was signed and sealed.

"The court: I will strike out your remarks and my own with it and strike the entire matter from the record.

"Mr. Carlson: I ask that it be noted on the record that these remarks passed in the presence of the jury. I think it is prejudicial to the defendant.

"The court: I think your remarks are very impertinent and I will strike them from the record. If you want trouble * * * I warned you from the beginning that I am not going to stand for it.

"Mr. Carlson: Your honor, please, I asked one question of the woman  *   *   *.

"The court (interrupting) : I know what you are trying to do. I am not simple up here. You are trying to influence the jury and you are trying to do it in a manner the law does not permit and I am not going to permit it.  *   *   *"

Another question was asked as to whether Mrs. Randle was living with her husband, the defendant, on July 18th, 1941, the date on which the crime was alleged to have been perpetrated. The objection of the state's attorney was sustained and an exception entered. Defense counsel persisted, saying:

"Mr. Carlson: I believe, if your honor please, I have a right to show with whom this man was living at the time.

"The court: All right, I am ruling on the questions. You have no right at all except to take the exception to my ruling. Don't try to make speeches here.

"Mr. Carlson: With all due deference to the court, I am not endeavoring to make speeches. I represent a client here. It is my business to see to it that he gets a trial.

"The court: You are, and I think you are very impertinent."

These several episodes in the trial of a case could not fail to have proven prejudicial to the defendant. They have no place whatever in an orderly trial. A trial judge should rule on the exceptions of respective counsel and that should end the matter. If counsel becomes impertinent the court has power to protect itself against such contempt. But there was no justification whatever for the court to say to counsel, in the presence of the jury, that "common experience" told him that a married man with a family of five children was the type of person "to go out and do this," that is, attempt to commit rape. There was no justification either for the court's statement, in answer to the observation that men are often accused of the crime unjustly, that very often, in ninety-nine cases out of a hundred, such persons are accused justly.

If the rights of the individual, when accused of crime, are to be preserved, if the presumption of a defendant's innocence is under our law to be indulged until he is found guilty of the offense charged by a jury, certainly the deliberations of a jury should not be confused by what a judge says his experience has been or his belief that ninety-nine out of a hundred divers persons accused of crime are guilty. The court's statement that his own remarks and those of defense counsel would be struck from the record did not cure the mischief in our judgment. Nor was it cured by the charge to the jury when the judge said that he had no personal animus towards defense counsel. It should never be necessary for a trial judge to make a statement of this sort to a jury. Patience is an indispensable quality in a judge in the trial of a suit at law:

The indictment in this case charges a grievous crime and perhaps it is not out of place to say that the more grevious the crime the greater should be the care on the part of trial judges to see to it that the rights which the law gives to the accused be preserved. This is an important case for the state and equally important for the individual. The liberty of the defendant, whether he be friendless or powerful in his state of life, should be zealously guarded by our courts.

The judgment will be reversed, and a *venire de novo* will issue.