14 N.J. Super. 16 (1951)
81 A.2d 181
CONCETTA MARINO, AN INFANT, BY HER GUARDIAN AD LITEM, JOHN MARINO, ANGELINE MARINO AND JOHN MARINO, PLAINTIFFS,
v.
LOUIS COCUZZA AND JOSEPH COCUZZA, DEFENDANTS. APPEAL OF DOMINICK F. PACHELLA.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 1951.
Decided May 24, 1951.
*17 Before Judges FREUND, DONGES and PROCTOR.
Mr. Milton T. Lasher argued the cause for the appellant.
PER CURIAM.
Dominick F. Pachella, an attorney and counselor-at-law of this State, appeals from an order of the Bergen County Court adjudging him guilty of contempt committed in the course of the trial of a civil action and consisting allegedly of interruptions of the court, for which he declined to apologize. A fine of $36 was imposed which the appellant paid as hereinafter related.
Pachella was the attorney for the plaintiffs in a negligence suit which came on for trial before the court and a jury on November 27 and 28, 1950. There were two defendants represented by separate counsel. The colloquy which precipitated *18 the ruling of contempt arose on the second morning, when the plaintiffs' case had been completed except for the testimony of a medical witness, and is as follows:
"Mr. Pachella * * * I have one more witness, Dr. Mores, who was here all day yesterday. He is not in the room at the moment, and I respectfully ask your Honor for a ten minute recess, so I can locate him.
The Court: I would rather not take that. I will give you an opportunity to locate him if he is about the courthouse. Has he been subpoenaed?
Mr. Pachella: He has not been subpoenaed technically. He is the treating physician.
The Court: Are you through with your case on the question of liability?
Mr. Pachella: Yes.
The Court: I don't see any reason why we could not proceed with the defense, and take the doctor's testimony later on. Do you have any objection?
Mr. Breslin: I have no objection.
Mr. Barrett: I have no objection.
Mr. Pachella: Your Honor, without objection, under the rules 
The Court: There is no objection. Let us proceed with the defense. Do you object to it?
Mr. Pachella: I simply want to say to the Court 
The Court: There is nothing to say unless you ask the Court  apparently you are ignorant of the rules of practice 
Mr. Pachella: Your remark is uncalled for, and I move for a mistrial.
The Court: You are in contempt, and I grant the motion."
After the jury was excused, the colloquy continued as follows:
"Mr. Pachella: Your remarks about me, sir, were entirely uncalled for.
The Court: Sit down. Mr. Pachella, you will not leave the courtroom until the Court permits it.
Mr. Pachella: I understand, sir.
May my clients be excused, sir?
The Court: Your clients and anyone else connected with the case."
Thereafter, according to his brief, the appellant remained in the courtroom for an hour and a half, when the judge excused him until two o'clock of the same day; then he was instructed to return on December 1 at 10 A.M. At that *19 time he presented himself and was instructed to return on December 8. There is before us a transcript of the proceedings of that day, from which we quote:
"The Court: All right, Mr. Pachella. Mr. Pachella, you stand before the Court convicted of a contempt of the Court. In my eighteen years on the Bench I never yet have carried through a contempt proceeding against any lawyer and I want to tell you that I feel very badly that yours has to be the first case. I put this off until today hoping that you would see fit to apologize for your conduct. I have heard no apology and have no indication that you have any intention of doing so.
Well, what have you to say?
Mr. Pachella: I see nothing in the record which calls for an apology from counsel to the Court.
The Court: Well, the gist of your offense is interrupting the Court, not permitting the Judge to finish what he was saying, which in my judgment is a breach of the ordinary rules of courtesy governing the conduct between gentlemen, therefore a breach of courtroom etiquette, showing disrespect of the judge. That you did this appears from the record. That you repeated the offense also appears from the record, and from these facts I deduce that what you did you did intentionally, and your failure to offer an apology leads me to believe that I wasn't wrong in forming my judgment.
Mr. Pachella: I will say to the Court that it was never my intent to act in any way that could be construed as contemptuous of the Court. I also say that no remark on my part is intended as an apology to the Court at this time because I see nothing in the entire record that can possibly be construed as contempt of Court.

* * * * * * * *
The Court: And when I tried to call your attention to the fact that you were out of order and you were apparently ignorant of the rules of procedure you interrupted me again.
Mr. Pachella: If the Court please, I was trying to tell your Honor that under the rules I had come to that part of my case where I had completed my case, with the exception of the question of damages, and I wanted to rest with that one exception. Your Honor interrupted me at that point.
The Court: You keep on making a point of my interrupting you, yet you admit you have no right to do it.
Mr. Pachella: I don't dispute that, sir, but I say with the exception where your Honor stated I was apparently ignorant of the rule of practice, where I may have interrupted and said `Your remark is uncalled for,' and asked for a mistrial, that there wasn't any interruption by me at any of those points."
The transcript shows that the judge endeavored repeatedly to elicit an apology from the attorney, but he insisted he had *20 not intended to be disrespectful or guilty of any contemptuous conduct, and declined to apologize.
"The Court: * * * Do you say now that you did not intend any disrespect to the Court?
Mr. Pachella: I just stated to the Court, I say that.
The Court: Isn't that the same as apologizing? What is the difference?
Mr. Pachella: I don't apologize, sir. An apology comes when one has purposely done something.
The Court: Well, is it your statement that you didn't do this purposely or that you didn't do it at all?
Mr. Pachella: It is my statement that I didn't do it at all, that whatever interruptions there may be in the case are more or less normal in any trial. * * *

* * * * * * * *
The Court: All right. Then I have no reason to change my opinion. The result of this thing was a loss of time spent at the trial, the jury service was wasted, and some other expense  I don't know how much, nor exactly who they fall upon. I would say adequate punishment in this case would be that you stand fined $36.00. Are you prepared to pay it?
Mr. Pachella: I am prepared to pay it under protest, your Honor * * *
* * * Shall I take care of that with Mr. Kellogg (the Court Clerk)?
The Court: All right.
Mr. Pachella: Or the County Clerk?
The Court: The Sheriff. I think you will have to pay it to the Sheriff.
Mr. Pachella: Pay it to the Sheriff, sir?
The Court: Yes."
According to the transcript, the following then occurred:
"Mr. Pachella: Your Honor, I appeared in the custody of one of the officers of this Court at the Sheriff's Office in order to pay the fine imposed upon me, for what your Honor has termed contempt of Court, in the sum of $36.00. I was then informed that I would have to be fingerprinted and photographed in the same manner as criminals, in order to pay the fine. I offered the fine but it wasn't acceptable unless I went through the actual gates and was confined therein and photographed and fingerprinted. I stated to the Chief Clerk and to the officer who accompanied me at your Honor's orders I did not think the matter with which I was charged by your Honor would call for such photographing and fingerprinting and I declined to be so photographed and fingerprinted, and I am now before the *21 Court so that I may pay the fine to the Clerk of this Court, which I think would be the proper procedure in a case of this kind."
The court thought that the appellant ought not be subjected to the humiliation of being fingerprinted and photographed. A discussion ensued as to the right of the clerk to accept the fine and the judge suggested that the appellant file a brief on the point. This was subsequently done and the clerk authorized to accept the fine.
The order of contempt certifies, pursuant to Rule 3:80-1, that the incidents therein enumerated were committed in the actual presence of the court and that "Mr. Pachella's conduct was intentionally disrespectful and, while I was willing to revise my judgment on December 8th before I fined Mr. Pachella, if he would apologize, his refusal to do so confirmed my belief that my original thought was correct." Notice of appeal from the order and appellant's brief and appendix were served upon the judge from whose order the appeal is taken.
The principles pertaining to the conduct of members of the bench and bar are ancient in origin, and current in emphasis. The Canons of Judicial and Professional Ethics adopted by the American Bar Association govern the conduct of the judges and the members of the bar of this State, by virtue of Rule 1:7-6, and they appear in full in the General Appendix of the Rules.
The judge and counsel, as officers of the court, share the responsibility for the faithful and meticulous performance of the high duty of maintaining in fact, as well as in appearance, the fair and impartial administration of justice. Stroming v. Stroming, 12 N.J. Super. 217 (App. Div. 1951). "The essence of contempt is that it obstructs, or tends to obstruct, the administration of justice." Fox, The History of Contempt of Court, 216; In re Caruba, 139 N.J. Eq. 404 (Ch. 1947), affirmed 140 N.J. Eq. 563 (E. & A. 1947). "Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients." Hickman v. *22 Taylor, 329 U.S. 495, 91 L.Ed. 451 (1947). "Generally speaking, it is the duty of the attorney to maintain the respect due to courts and judicial officers, and their rulings, and any breach of that duty is a contempt. * * * it is the duty of the court to take such steps as may appear to be necessary to preserve its dignity and good name, * * * and he (the attorney) may be disciplined as for a contempt of court * * *. It is manifest, therefore, that the duty which the attorney owes to the law, whose officer he is, and to the temple of the law wherein he officiates, must harmonize with the duty he owes to his client of advocating his cause, and presenting the case in hand according to legal procedure, and the time honored and settled usages of the courts, which have obtained the force of law, and not in defiance of its recognized rules and well settled traditions." In re Selick J. Mindes, 88 N.J.L. 117 (Sup. Ct. 1915); Canons of Professional Ethics, No. 1. But, the conduct charged as constituting the contempt must be such that some degree of delinquency or misbehavior can be predicated on it. Commonwealth v. Sheasley, 102 Pa. Super. 384, 157 A. 27 (1931).
"A judge is not a mere umpire in a forensic encounter, but a minister of justice." Peiter v. Degenring, 136 Conn. 331, 71 A.2d 87 (Sup. 1949). "The judge * * * is the governor of the trial for the purpose of assuring its proper conduct and the fair and impartial administration of justice between the parties to the litigation." 53 Am. Jur., Trial, sec. 74, p. 73. "The trial judge occupies a high position. He presides over the trial. The jury has great respect for him. They can be easily influenced by the slightest suggestion coming from the court, whether it be a nod of the head, a smile, a frown, or a spoken word. It is therefore imperative that the trial judge shall conduct himself with the utmost caution in order that the unusual power he possesses shall not be abused." State v. Wheat, 131 Kan. 562, 292 Pac. 793, 85 A.L.R. 1412, 1417 (Sup. 1930).
Among the ancient precedents appearing in the preface to the Canons of Judicial Ethics is the admonition, "Patience *23 * * * is an essential part of justice." Lord Bacon's essay "Of Judicature." The following rules of conduct are found in the Canons: "5. A judge should be temperate, attentive, patient * * * 10. * * * courteous to counsel * * * 15. * * * should bear in mind that his undue interference, impatience * * * may tend to prevent the proper presentation of the cause. * * * In addressing counsel, * * * he should avoid a controversial manner or tone. He should avoid interruptions of counsel in their arguments * * *," and again in Canon 34 he is cautioned to be courteous and patient. Roberts Elec. Inc. v. Foundations, &c., 5 N.J. 426 (1950). "Patience is an indispensable quality in a judge in the trial of a suit at law." State v. Randle, 128 N.J.L. 496 (Sup. 1942). See Sergeant Ballantine's Experiences, p. 158.
"It is undoubtedly within the province of the trial court to admonish and rebuke counsel as occasion may require." 53 Am. Jur., Trial, sec. 88, p. 82; Gallagher v. Municipal Court of the City of Los Angeles, 192 Pac.2d 905 (Cal. Sup. 1948). Without enlarging this opinion with additional excerpts from the record, it will suffice to observe that it fails to reveal any action or conduct on the part of the attorney which was, even in the slightest, disrespectful to the court. Mr. Pachella was endeavoring to call the attention of the court to the fact that except for the matter of damages he had completed the presentation of his clients' case. He should have been permitted to complete his statement. His conduct was not contemptuous; he should not have been held in contempt; and the cause of his clients should not have been prejudiced in the eyes of the jury by the judge's comment that he was "ignorant of the rules of practice." Bennett v. Harris, 124 N.Y. Supp. 797 (Sup. 1910). The judge realized his error and granted the motion for a mistrial, but his ruling could not right the wrong.
Upon the altogether regrettable record before us, the order of contempt must in all justice be reversed.