173 N.J. Super. 459 (1980)
414 A.2d 590
DONALD J. MASSAKER AND STONEHEDGE KENNEL, INC., PLAINTIFFS-RESPONDENTS,
v.
GERALD A. PETRAITIS, SUSAN M. PETRAITIS, BERKELEY FEDERAL SAVINGS AND LOAN ASSOCIATION, DEFENDANTS, AND STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 1980.
Decided April 23, 1980.
*460 Before Judges MATTHEWS, ARD and POLOW.
George W. Fisher, Deputy Attorney General, argued the cause for appellant (John J. Degnan, Attorney General of New Jersey, attorney; Erminie L. Conley, Assistant Attorney General, of counsel).
Robyn I. Glemby argued the cause for respondents (Kreiger, Karas & Kilstein, attorneys).
The opinion of the court was delivered by POLOW, J.A.D.
The State of New Jersey appeals from an adverse judgment awarding damages to plaintiffs for losses occasioned by a delay of approximately 56 days between entry of a judgment and docketing thereof by the office of the Clerk of the Superior *461 Court. The State urges reversal, relying primarily on the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., and sovereign and judicial immunity.
On February 17, 1976 plaintiffs had been awarded judgment of $9,000 plus costs against defendants Oleski Construction, Inc. and Wayne Oleski, individually (Oleski). The formal documentation thereof, entitled "Order for Judgment," was signed by the judge on February 24, 1976, received in the office of the Clerk of the Superior Court on February 26, 1976, but not docketed until April 21, 1976. According to the testimony of the Clerk of the Superior Court, the delay in docketing resulted from the existence of a large case backlog due to lack of adequate staffing.
On February 25, 1976 Oleski conveyed certain real estate to defendants Petraitis, subject to a purchase money mortgage for funds advanced by defendant Berkeley Federal Savings and Loan Association. Out of the proceeds of the real estate sale Oleski received $10,850 in cash. Although recording of the deed and mortgage was delayed until March 5, 1976, there is no evidence that as of that date either purchaser or mortgagee had any knowledge of the existence of plaintiffs' judgment against Oleski nor had the judgment been properly docketed. Hence, purchasers and mortgagee were recognized as bona fide purchasers for value by the trial court and their title was held to be free and clear of plaintiffs' judgment lien pursuant to N.J.S.A. 46:22-1. That determination by the trial judge is not challenged on appeal.
Since plaintiffs, as judgment creditors against Oleski, have been successful in satisfying their judgment only to the extent of $3,500, they suffered a loss of the balance thereof in the sum of $5,621.85 which presumably would have been satisfied out of the cash payment made to Oleski at the closing had the judgment been docketed to provide constructive notice prior to the closing. In this regard, it should be noted that the closing took place eight days after judgment had been rendered, one day *462 after the entry of a formal, written "order for judgment" but one day before that judgment was received for docketing in the office of the Clerk of the Superior Court. The purchaser and mortgagee then did not record the deed and mortgage until March 5, 1976, more than a week after the judgment against the grantor had been received for docketing.
If the judgment had been docketed within a short time after receipt in the Clerk's office, even though the balance as shown on the closing statement would already have been disbursed to the grantors, plaintiffs could nevertheless have claimed a prior lien against the title to the real estate based upon prior record notice and the claim against the purchaser, and the mortgagee would have required resolution of the priority of lien claims. N.J.S.A. 46:21-1; but see Gutermuth v. Ropiecki, 159 N.J. Super. 139 (Ch.Div. 1977). In any event, the priority of liens was not in issue since the judgment had not been docketed until long after the deed and mortgage had been recorded.
Although the Tort Claims Act was not offered as a defense in the trial court, plaintiffs' objection to consideration thereof on appeal is without substance. They suggest an injustice would result should the Tort Claims Act be found to bar their recovery, since after the decision below, on the State's application, plaintiffs consented to assign their rights against Oleski to the State. Obviously, should the judgment against the State fall for any reason, the assignment will become inoperative.
Nor would the principle of estoppel by conduct, Scanlon v. General Motors Corp., 65 N.J. 582, 598 (1974), nor equitable estoppel, Dambro v. Union Cty. Park Comm'n, 130 N.J. Super. 450, 457 (Law Div. 1974), require us to limit defenses to those presented at trial. Although the issue was not the subject of argument or concern by the trial judge, it was in fact asserted in the State's answer within the second and ninth separate defenses. Failure of either side to have argued the effect of the Tort Claims Act on the issues herein should not prevent us from considering the issue on appeal. Not only is the act relevant but *463 consideration thereof is essential for proper disposition of the case. Spiegle v. Seaman, 160 N.J. Super. 471, 481 (App.Div. 1978). In light of its importance, the trial judge should have considered the act in rendering a decision.
In a very brief letter opinion the trial judge held the State liable; "As a result of the failure of the Clerk of the Superior Court to properly docket the judgment, [the purchaser and mortgagee] were bona fide purchasers of value without actual or constructive notice of the judgment ..." Consequently, he ruled that plaintiffs lost their priority under N.J.S.A. 46:22-1 because of the Clerk's "negligence."
The trial judge's conclusion that the Superior Court Clerk was guilty of negligence is not supported by specific findings of fact based upon evidence in the record. The opinion indicates that although the judgment was received by the Clerk for docketing on February 26, 1976, "through mistake or inadvertence [it] was docketed ... in other than the civil judgment docket. The judgment was correctly docketed in the civil judgment docket on April 21, 1976 as a result of an inquiry by plaintiff's attorney."
Although the Clerk testified that the judgment was received in the matrimonial section of the Clerk's office, "they would forward it to the law docketing section at which time it would lay with other papers which were received on the 26th of February until such time as the docketing people would be able to sort by docket number and docket book; at which time they would look over the order, ... determine the nature of the paper and enter it into the civil docket." He further testified that the judgment was actually entered on April 21, 1976. There was no contradictory evidence.
The Clerk testified without contradiction that despite efforts to keep up with a serious processing backlog, lack of personnel prevented accomplishment of that goal. He explained that despite using employees ten hours a day and working Saturdays, the Clerk's office was still running six to eight weeks behind. He testified, also without contradiction, that the backlog came *464 about because of the State's failure to provide him with sufficient personnel to handle the work generated by the explosion in litigation in recent years. He concluded that his staff was entirely inadequate to keep the records current.
Although there is some suggestion in the record that the "order for judgment" in question may have been placed for listing or may have been entered in the wrong docket, the uncontroverted evidence in this case supports the conclusion that there was a serious backlog created by receipt of an average of 238 judgments a day, resulting in docketing delays of six to eight weeks. Hence, even if there was a mistaken entry of incorrect referral of this particular document, the failure to docket it prior to March 5, 1976, the date of recording of the deed and mortgage, was not due to negligence but rather to the backlog caused by shortage of manpower.
N.J.S.A. 59:2-3(c) provides:
A public entity is not liable for the exercise of discretion in determining whether to seek or whether to provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services.
This section codified existing case law. Amelchenko v. Freehold, 42 N.J. 541 (1964). In Amelchenko plaintiff sought to hold the municipality liable for injuries sustained as a result of failure to remove snow from a municipal parking lot. The court found that the municipal authorities had kept men and equipment on the job around the clock throughout the snowstorm. However, the injury occurred about 33 hours later without the workers having reached the parking lot in which the accident took place. The municipality was entitled to a reasonable time to meet its responsibility brought on by lack of adequate personnel and equipment. See Bergen v. Koppenal, 52 N.J. 478, 480 *465 (1968); Hoy v. Capelli, 48 N.J. 81, 87-91 (1966); Fitzgerald v. Palmer, 47 N.J. 106, 109-110 (1966).
Although the docketing of judgments is a nondiscretionary duty, as argued by plaintiffs, the decision to employ or not to employ additional personnel to meet the backlog is a discretionary activity subject to the provisions of N.J.S.A. 59:2-3(c). The State, as a public entity, is thus not liable for its determination not to provide additional resources, equipment or personnel to speed up the process in order to eliminate the six to eight-week delay in docketing judgments.
When adopted in 1972, the Tort Claims Act not only codified existing case law but also expressed a general policy to provide immunity with exceptions, rather than liability with exceptions. N.J.S.A. 59:2-1(a); Burg v. State, 147 N.J. Super. 316, 320 (App. Div. 1977), certif. den. 75 N.J. 11 (1977). Our decision herein is in accord with that statutory policy.
A judgment creditor, under circumstances similar to those in the present case, is not entirely without ability to protect his interests. The record below indicates that upon specific request the Clerk of the Superior Court would docket the judgment immediately. Hence, in order to protect his own interests a judgment creditor should not rely exclusively on the ordinary administrative processes  he should make such additional inquiries as appropriate to insure that a judgment which should be docketed has been docketed. Furthermore, lien priorities as among judgment creditors are determined by the order in which execution is issued rather than priority of docketing of judgments. N.J.S.A. 2A:17-39; Sisco v. N.J. Bank, 158 N.J. Super. 111, 119 (App.Div. 1978); Burg v. Edmondson, 111 N.J. Super. 82, 85 (Ch.Div. 1970). The record in this case discloses no effort by plaintiffs to accomplish issuance of execution against the judgment debtors' property.
In view of our determination that there must be a reversal of the judgment entered based upon applicability of *466 N.J.S.A. 59:2-3(c) of the Tort Claims Act in that the delay was the result of inadequate personnel rather than negligence, we deem it unnecessary to deal with the other arguments raised by appellant.
The judgment and amended judgment below are reversed and the assignment of the judgment against Oleski Construction Co. and Wayne Oleski, Docket L-8302-74, to the State of New Jersey is declared null and void and of no force and effect.