FERNANDITO RIVERA, AN INFANT BY HIS GUARDIAN AD LITEM, ANTONIA RIVERA, AND ANTONIA RIVERA, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS, v. RUSSELL D. GERNER, DEFENDANT-APPELLANT, AND GEORGE MARINARO AND MORRIS SCHOOL DISTRICT BOARD OF EDUCATION, DEFENDANTS-RESPONDENTS.

Argued January 11, 1982—Decided May 26, 1982.

528

*Donald S. McCord, Jr.* argued the cause for appellant (*O'Donnell, McCord & Leslie,* attorneys).

*Edward V. Gannon* argued the cause for respondents Fernandito Rivera, etc., et al.

*William W. Murphy* argued the cause for respondents George Marinaro, et al. (*Bennett & Bennett,* attorneys; *Richard D. Bennett* on the brief).

The opinion of the Court was delivered by

O'HERN, J.

This case arises from a personal injury suit by an infant pedestrian against a school bus operator and another motorist. The first question in this appeal is whether the trial court acted improperly by raising for the first time after summation the issue of the statutory limitation of damages for pain and suffering against the public entity under *N.J.S.A.* 59:9-2(d). The second question is whether the trial court properly instructed the jury on this issue.

On November 12, 1976, the seven year old plaintiff, Fernandito Rivera, was severely injured by the defendant Gerner's automobile as Fernandito tried to walk across the street to his home after alighting from the Morris District's school bus driven by defendant Marinaro. Plaintiff was in a special education class (only because of his unfamiliarity with the English language). His school bus was a blue van without the familiar yellow color, red and amber flashers or school bus markings. After stopping at a T intersection, the van driver signaled Fernandito to cross the throat of the T. Marinaro put his blinkers on, and as Fernandito reached the road's center, the van started to turn right. Gerner was overtaking the van as it turned right when

Fernandito suddenly veered left and crossed into Gerner's path. The plaintiff was struck and thrown, suffering multiple injuries including a comminuted (3 pieces) angulated (bowed) fracture of the shaft of the right thigh bone, a laceration of the forehead, a laceration of the left big toe with the nail torn off, a laceration atop the left foot with torn tendons, and displaced and angulated fractures of the lower leg bones just above the ankle joint. He was confined to a hospital for almost three months. Before being released he had to be retrained to walk and could do so only with crutches. Over the months and years before trial, a shortening of the right leg, measured by x-ray, gradually lessened from ¾″ to ¼″. During the period of treatment, Fernandito had a noticeable limp and used a lift in his right shoe for equalization. As of his last doctor's visit prior to trial in 1978, the physician concluded that the angulation in the left leg was slight and was not expected to pose a functional problem, and that the leg length discrepancy eventually would be insignificant.

Plaintiff sued the two drivers, Gerner and Marinaro, and the latter's employer, the Morris School District Board of Education. Marinaro and the School District filed answers asserting as affirmative defenses that: 1) the plaintiff was guilty of contributory negligence, 2) any damages allegedly sustained by the plaintiff resulted from the negligence of parties over whom the defendants maintained no control, and 3) the claim was barred by the New Jersey Tort Claims Act (TCA), *N.J.S.A.* 59:1–1 *et seq.*

At trial, both court and counsel addressed numerous legal issues, including the application of various Department of Education and Division of Motor Vehicles regulations, dealing with school bus signals, as well as certain sections of the TCA, *N.J.S.A.* 59:2–3(a) (d) (discretionary activities) and *N.J.S.A.* 59:4–6 (plan or design immunity). At no time before the charge to the jury, however, did the court or counsel ever discuss *N.J.S.A.* 59:9–2(d), prohibiting the award of pain and suffering damages against a public entity or public employee unless the

case involves "permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00."

During the trial, plaintiff's physician testified that there would be no permanent effect from the toe injury, that the facial laceration had healed, that the plaintiff's overall prognosis was good, and that the discrepancy in leg length would eventually diminish to a point where it would be insignificant. Presumably in view of that testimony, neither defendant produced further medical testimony.

After summation, the trial court, for the first time, raised with counsel the issue of directing a special interrogatory to ask the jury specifically: "Did any of the plaintiff's injuries result in permanent loss of a bodily function?" Plaintiff's counsel objected strenuously on the ground that there was no issue of permanency in the case in view of the undisputed evidence of a facial scar and the permanent leg shortening. The court responded that the jury had not been shown the facial scar and reasonable minds could differ on the issue of permanent loss of bodily function. The judge expressed the desire to make sure that "we have covered all of the possibilities." Gerner's counsel did not object to the proposed interrogatory. The court submitted to the jury a set of special interrogatories covering ten points including specific inquiries as to "permanent loss of a bodily function" and the award for pain and suffering.

The jury found Gerner 15% negligent, Marinaro 10% negligent, the Board 75% negligent and the child 0% negligent. Total damages were found to be $50,000, with $30,000 of that amount attributed to pain and suffering. The panel found that none of the child's injuries resulted in the permanent loss of a bodily function.

The trial judge then molded the verdict, excluding the amount attributed to pain and suffering from the judgment against Marinaro and the Board. Because the municipality was immune from the pain and suffering damages, it was not required to

contribute to that portion of the judgment even though it was a joint tortfeasor with Gerner.

Pursuant to *N.J.S.A.* 2A:53A–1 *et seq.*, the Joint Tortfeasor Contribution Act, Gerner, however, was liable for the entire amount of the judgment remaining after Marinaro and the Board had paid their 85% share of the remaining $20,000 judgment. Gerner was not immune and was thus "jointly and severally liable" for the injuries to Fernandito and was responsible for any portion of the judgment that could not be recovered from his joint tortfeasors. See *N.J.S.A.* 2A:53A–1 *et seq.* Gerner, the 15% negligent defendant, was thus charged with a $33,000 judgment pursuant to *N.J.S.A.* 59:9–3 (contribution by a public entity or public employee with a joint tortfeasor). After including prejudgment interest, the result was that the 15% negligent private defendant ended up paying some 70% of the total award.

Gerner moved for a new trial, alleging various trial errors including the failure of the court to address section 59:9–2(d) of the Tort Claims Act earlier in the trial. Since the plaintiff no longer pursued its objection, the court found no merit in the argument of Gerner's counsel that he would have urged loss of bodily function or permanent disfigurement to the jury himself. It denied the motion, ruling that Gerner had not objected to the instruction or special interrogatory, that counsel was presumed to know the law and its effects, and that the TCA is self-executing and not something which could be waived.

In his appeal to the Appellate Division, Gerner contended, in part, that 1) the court erred by introducing *N.J.S.A.* 59:9–2(d) *sua sponte* and by refusing to consider its application waived by the defendants because they had not specifically introduced it, and 2) *N.J.S.A.* 59:9–2(d) and 59:9–3 are unconstitutional (not raised below). The Appellate Division affirmed the trial court. We granted certification limited to the questions associated with *N.J.S.A.* 59:9–2(d). 87 *N.J.* 368 (1981).

## I.

In *Willis v. Dept. of Cons. and Ec. Dev.*, 55 *N.J.* 534, 537 (1970), this Court abolished common law absolute governmental immunity in tort actions, deciding that "[i]t is plainly unjust to refuse relief to persons injured by the wrongful conduct of the State." There, a three year old girl had had her arm mauled and amputated by a bear in a State recreational facility. The Court limited the applicability of its decision to the immediate case, and to those based on claims arising after January 1, 1971. Acknowledging that the Legislature had recently authorized the Attorney General to conduct a thorough review of governmental immunity, the Court noted that

> ... the Legislature may wish to require timely notice of claims to permit an opportunity to investigate. Or the Legislature may choose to fix a monetary limit on recoveries, or to exclude some category of damages, or to adopt a concept of liability different from that of the common law.... [*Id.* at 541].

The legislative response was to reestablish sovereign immunity except in certain circumstances defined in the Tort Claims Act. *N.J.S.A.* 59:1–1 *et seq.* Our threshold for eligibility is unique. *La Barrie v. Housing Auth. of Jersey City*, 143 *N.J.Super.* 61 (Law Div. 1976). Although much of our TCA was modeled after the California Tort Claims Act, *Cal. Gov't. Code* § 810 *et seq.*, New Jersey alone incorporated a monetary threshold of $1,000 in medical expenses and a "severity threshold" before liability attaches for pain and suffering to insure that recovery would be barred for insubstantial claims. *N.J.S.A.* 59:9–2(d).

Our courts have uniformly applied the act's provisions in accord with its stated policy limiting recovery to cases in which the severity of injury can be objectively shown. In *Polyard v. Terry*, 148 *N.J.Super.* 202 (Law Div. 1977), rev'd on other grounds, 160 *N.J.Super.* 497 (App.Div.1978), aff'd 79 *N.J.* 547 (1979), the court held that recovery was allowable for pain and suffering when the plaintiff was killed and thus did not incur $1,000 worth of medical expenses. The court reasoned that the Legislature intended recovery for pain and suffering in aggra-

vated injury cases. Similarly, in *Peterson v. Edison Tp. Bd. of Ed.*, 137 *N.J.Super.* 566 (App.Div.1975), the court held that the Legislature intended to bar recovery for pain and suffering if medical expenses do not meet the threshold requirement, but to allow recovery for the permanent injury itself. Against this backdrop, we review the issues raised by appellant.

## II.

First, we find the Tort Claims Act as applied here constitutional. The defendant's argument is premised on two theories: equal protection under the Federal and State Constitutions and due process under the Due Process Clause of the U.S. Constitution. With respect to the former claim, we have held that

> [w]here state regulation neither infringes upon a fundamental right nor burdens a suspect class, the Supreme Court has upheld any legislative classification based upon facts that "reasonably can be conceived to constitute a distinction, or difference in state policy...." *Allied Stores v. Bowers*, 358 *U.S.* 522, 530 [79 *S.Ct.* 437, 442, 3 *L.Ed.2d* 480] (1959). [Petition for Review of Opinion 475, 89 *N.J.* 74, 94 (1982)].

The Court must determine whether the classification made by the State bears a rational relation to a legitimate governmental purpose. *Salorio v. Glaser*, 82 *N.J.* 482, 515 (1980), appeal dismissed 449 *U.S.* 804, 101 *S.Ct.* 49, 66 *L.Ed.2d* 7 (1980); *cert.* denied 449 *U.S.* 874, 101 *S.Ct.* 215, 66 *L.Ed.2d* 94 (1980). Here, since no suspect class or fundamental right is at stake, Gerner bears the burden of showing that the provision is not rationally related to the stated public policy of limiting governmental liability. That burden has not been met. The rational basis underlying the enactment is self evident. The provision serves its intended purpose of limiting recovery for pain and suffering to cases of more severe injury.

Nor has defendant been denied property without due process of law. First, as discussed below, the generalized pleading of the Tort Claims Act as an affirmative defense was sufficient. Second, although the result of the events here rendered one defendant disproportionately liable, such a result

occurs often in cases involving joint and several liability. *N.J. S.A.* 2A:53A–1 *et seq.* allows a plaintiff to sue either defendant for the entire claim or to sue them jointly and levy execution of the entire amount against either alone. The defendant is entitled to seek contribution from his fellow defendants if recoverable. See *Van Horn v. William Blanchard Co.,* 88 *N.J.* 91, 96 (1981) and *Tino v. Stout,* 49 *N.J.* 289 (1967) as to disparate effects upon joint tortfeasors. If one defendant were insolvent or bankrupt, a second joint tortfeasor might be liable for the total amount of the judgment. This result would seem to impose a disproportionate burden on the solvent defendant. However, this rule operates to provide the injured person with full recovery. Just as the common law did, the Legislature may reasonably grant injured plaintiffs the right to full recovery from any of multiple tortfeasors. These principles do not act to abridge a defendant's due process rights.

### III.

We find no waiver of the defense of immunity or limitation of liability under *N.J.S.A.* 59:9–2(d) merely because defendant did not plead the specific statutory section relied upon. Plaintiff's complaint failed to allege specifically any of the prerequisites to recovery for pain and suffering against the public entity, *i.e.,* permanent impairment of bodily function, permanent disfigurement, or loss of bodily member with medical damages in excess of $1,000. Conversely, defendant's answer asserted the Tort Claims Act generally as an affirmative defense.

Little profit will result from an extended analysis of the extent of a public entity's burden to plead and prove its affirmative defense of immunity, *Ellison v. Housing Authority of South Amboy,* 162 *N.J.Super.* 347 (App.Div.1978), or whether, as has been suggested in other fields of limited liability, the plaintiff bears the continuing burden of overcoming each and every limitation of a cause of action. *Seskine v. Cone,* 139 *N.J.Super.*

307 (Law Div. 1976) (defendant not required to affirmatively plead plaintiff's failure to meet statutory exemptions under No Fault Law); see, contra, *Fennell v. Ferreira*, 133 *N.J.Super.* 63 (Law Div. 1975). While the "giants of an earlier age of special pleading would have been . . . annoyed" at the form of these pleadings, *Jersey City v. Hague*, 18 *N.J.* 584, 601 (1955), a claim need only be pleaded in form fairly to apprise the adversary of the facts intended to be proved. Vanderbilt, C. J., in *Jersey City, supra*, stated that "[a]ll pleadings shall be so construed as to do substantial justice." All that is required is that "the gist of a substantive ground of relief . . . be set forth, albeit informally." *Id.* at 602. The pleadings of both parties met this standard. *R.* 4:5–4 requires a defendant to set forth "specifically and separately a statement of facts constituting an . . . affirmative defense. . . . " Better practice would be to plead specifically the separate statutory affirmative defenses given to public entities under the Act. See *Hill v. Bd. of Ed. of the Township of Middletown*, 183 *N.J.Super.* 36 (App.Div.1982). Although the defense was only pleaded generally, discovery can be used to further define the issues. *R.* 4:10–1. Finally, because of the complexity of the Tort Claims Act, *N.J.S.A.* 59:1–1 *et seq.*, pretrial of actions involving the Act is to be encouraged. *R.* 4:25–1.

 However, it has been recognized under some circumstances that where public policy calls for it, and there is no unfair surprise, substantial prejudice or undue interference with the efficient administration of justice, a defense will be considered properly before the court although not pleaded. *E.g. Jackson v. Hankinson*, 94 *N.J.Super.* 505, 514 (App.Div.1967), rev'd o. g., 51 *N.J.* 230 (1968); *Douglas v. Harris*, 35 *N.J.* 270 (1961) (court should inquire into statutory prerequisites in Unsatisfied Claim and Judgment Board Fund case); *Massaker v. Petraitis*, 173 *N.J.Super.* 459 (App.Div.1980) (trial court should have considered TCA defense of discretion to hire or not hire deputy clerks. *N.J.S.A.* 59:2–3(c)). Trial judges should not be mere spectators at trial. *State v. Johnson*, 43 *N.J.* 572, 583

(1965), aff'd 384 *U.S.* 719, 86 *S.Ct.* 1772, 16 *L.Ed.*2d 882 (1966), rehearing denied 385 *U.S.* 890, 87 *S.Ct.* 12, 17 *L.Ed.*2d 121 (1966). When a case as presented raises issues within the confines of the legislative policy, and the pleadings can be amended to accommodate that policy without any substantial countervailing disadvantage to the parties or the judicial system, there is no fundamental injustice in conforming the pleadings of the case to the facts. This is consistent with the court's duty to see that substantial justice is done. *Marino v. Cocuzza,* 14 *N.J.Super.* 16 (App.Div.1951).

In light of the above, we conclude that the trial court acted properly in raising this issue on its own even though the parties had neither expressly advanced nor waived it. The problem here arises from the timing.

Although the parties discussed *N.J.S.A.* 59:4–6 (plan and design immunity) and *N.J.S.A.* 39:4–128.1 (duty of bus driver) at trial, they made no reference at all to *N.J.S.A.* 59:9–2(d) prior to closing arguments. So concerned were the parties about which of the statutes was to be relied upon that Gerner's attorney said he didn't want to "give a summation now and then he [plaintiff's attorney] pulls a statute out of his back pocket that the Court is inclined to charge."

The continuous thread running throughout decisions dealing with the injection of unpleaded or unargued issues into a case is the necessity to avoid prejudice or surprise. Judge Conford, S.J.A.D., said this in *Jackson v. Hankinson, supra:*

> The spirit of the rule called for pleading the defense of qualified immunity of a municipality to avoid *surprise.* However, it has been held that where public policy calls for it a defense will be considered properly before the court although not pleaded (subject impliedly to *absence of prejudice*). [94 *N.J.Super.* at 514; emphasis supplied]

In *Reale v. Tp. of Wayne,* 132 *N.J.Super.* 100, 106 (Law Div. 1975), late pleading of the failure to comply with the notice requirements of *N.J.S.A.* 59:1–1 et seq. was permitted since "[p]laintiffs have complained of no surprise or prejudice and the court perceives none." In *Seskine v. Cone, supra,* 139 *N.J.Super.*

at 310, a trial court dismissed a complaint on grounds of failure to meet a jurisdictional threshold under the No Fault Law, even though not pleaded, finding "[t]here was no evidence of surprise." Conversely, in *Polyard, supra,* 148 *N.J.Super.* 211–212, it was held that the issue of whether the medical bills totaled only $975, when $1,000 was needed, could not be injected into the case after closing arguments because the proofs had been presented to the jury without either party raising the issue. An appropriate regard for the orderly judicial process requires that parties be given a fair opportunity to pass on points critical to their cases. See *Waldor v. Untermann,* 10 *N.J.Super.* 188, 193 (App.Div.1950).

The better view then is expressed in *O'Connor v. Abraham Altus,* 67 *N.J.* 106, 116 (1975), that in certain factual situations, untimely raised defenses may be asserted in "the interests of justice" provided there is no "surprise or prejudice." Applying this standard, we conclude that permitting the defense to be asserted after summation in this trial caused surprise and prejudice. While it would have required acrobatic balance for Gerner's attorney to have urged the jury to find permanent impairment or disfigurement while limiting his own client's exposure, the peculiar facts of this case lent themselves to such an argument. Given the extreme nature of this plaintiff's injuries, it is important to note that none of the parties devoted much comment to proof of them. The plaintiff himself had gone into a "shell" after the accident and was not even asked to describe his experience of pain and suffering. Nor was the plaintiff asked to expose the forehead laceration (covered by a forelock) to the jury, or to walk without his elevated shoe before them. Had the plaintiff been aware of the issue of statutory eligibility, his counsel could have emphasized the nature of the injuries to sustain a pain and suffering award against the Morris School District. The Morris School District did not deny permanency but, relying upon the treating physician's testimony, said that plaintiff would have minimal functional problems of any significance. Gerner could have phrased the matter similarly by

urging to the jury that although there was indeed permanent loss of bodily function or disfigurement, it was minimal. That Gerner's counsel did not specifically object at trial should not be conclusive. "Justice to the litigants is always the polestar." *Martindell v. Martindell*, 21 *N.J.* 341, 349 (1956); *Grober v. Kahn*, 47 *N.J.* 132, 155 (1966); *New Jersey Highway Authority v. Renner*, 18 *N.J.* 485, 495 (1955).

Since presenting the defense to the jury after summation resulted in prejudice to defendant Gerner's opportunity to present his case fully to the jury, the matter should be remanded to the trial court for a new trial. Since certification has been limited to issues regarding *N.J.S.A.* 59:9–2(d), neither the reasonableness of the $50,000 damage award nor the negligence of the parties is subject to review. Nor did the plaintiff express any dissatisfaction with the amount of the verdict. The new trial should be limited to the question of whether plaintiff suffered any permanent loss of bodily function or permanent disfigurement within the meaning of *N.J.S.A.* 59:9–2(d). The jury should be charged on both the issue of permanent loss of bodily function and permanent disfigurement. The trial court erroneously excluded an instruction on permanent disfigurement although there was some evidence of it.[1]

The judgment of the Appellate Division is reversed and the matter remanded to the trial court for further proceedings in accordance with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices PASHMAN, SCHREIBER, HANDLER, POLLOCK and O'HERN—6.

*For affirmance*—None.

---

[1] The parties have not briefed or raised the issue of whether the jury should be given an ultimate outcome charge so that its deliberations will not be had in a vacuum or possibly be based on a mistaken notion of how the statute operates. *Roman v. Mitchell*, 82 *N.J.* 336, 345–347 (1980). We make no ruling on that issue.