285 N.J. Super. 154 (1995)
666 A.2d 613
CHARLES GRIMES, PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
CITY OF EAST ORANGE, A MUNICIPAL CORPORATION; HARRY HARMAN; EAST ORANGE POLICE COMMISSIONER; CHIEF GEORGE DAHER; EAST ORANGE CITY COUNCIL; DEFENDANTS-APPELLANTS-CROSS-RESPONDENTS, AND "JOHN DOE," DEFENDANT OR DEFENDANTS PRESENTLY UNKNOWN OR UNIDENTIFIED TO PLAINTIFF; "JAMES DOE," DEFENDANT OR DEFENDANTS PRESENTLY UNKNOWN OR UNIDENTIFIED TO PLAINTIFF, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 1995.
Decided November 8, 1995.
*157 Before Judges PRESSLER, KEEFE and WEFING.
Thomas M. McCormack argued the cause for appellants-cross-respondents (McCormack, Petrolle & Matthews, attorneys; Mr. McCormack, of counsel; Martin Healy and Mr. McCormack, on the brief).
Eldridge Hawkins argued the cause for respondent-cross-appellant (Mr. Hawkins, attorney and on the brief).
The opinion of the court was delivered by WEFING, J.A.D.
Plaintiff Charles Grimes filed a four-count complaint on October 31, 1991 against the City of East Orange, the East Orange City Council, the East Orange Police Commission, various individual defendants and John Doe and James Doe.
In the first count, Grimes, who was the Deputy Chief of Police for East Orange, sought approximately $46,000 for salary allegedly due him for the years 1988 and 1989. The second count alleged that the actions of defendants in denying Grimes his proper salary violated 42 U.S.C. § 1983. The third count claimed that the defendants, individually and jointly, harassed Grimes in an effort to have him resign his position as Deputy Chief so that defendant Harry Harman could be appointed as Chief of Police. Finally, the fourth count alleged that Grimes had not received the full salary due him for the year 1990.
At the end of the plaintiff's case, the trial court dismissed his 1988 salary claim. The trial court also dismissed Grimes's claims against defendant George Daher who was East Orange Chief of Police, and Grimes's superior, until Daher's resignation on February 28, 1990.
*158 Later, the trial court ruled that Grimes was entitled, as a matter of law, to the salary increases he was seeking for 1989 and 1990. Those salary awards were set forth in an Order entered October 19, 1994.
The trial court submitted to the jury plaintiff's claims under 42 U.S.C. § 1983. The jury found in favor of Grimes and awarded him $150,000 in compensatory damages and $420,000 in punitive damages. The jury allocated $300,000 of the punitive damages to the City of East Orange, $50,000 each to the East Orange Police Commission and East Orange City Council and $20,000 to Harry Harman. The compensatory damages were divided in the following manner: $100,000 against the City of East Orange, $20,000 each against the East Orange Police Commission and City Council and $10,000 against Harry Harman.
Defendants then moved for judgment notwithstanding the verdict or a new trial. (R. 4:40-2; R. 4:49-1). The trial court denied the motion but struck the punitive damages awarded against the municipal defendants on the basis of City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). The trial court rejected, however, defendants' argument that Harman was sued only in his official capacity; the final judgment that was entered on June 14, 1994, including the award of punitive damages, was entered against Harman individually.
Plaintiff moved to amend his complaint to assert a claim under the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8. The trial court refused to permit plaintiff to assert, post-verdict, a new cause of action.
Plaintiff's counsel also moved for an award of counsel fees since Grimes had prevailed on his § 1983 cause of action. 42 U.S.C. § 1988. By an order entered June 24, 1994, the trial court awarded a counsel fee of $44,300.
The parties have appealed and cross-appealed to this court. We affirm the order of October 19, 1994 that awarded Grimes back *159 salary and reverse the judgment of June 14, 1994 that awarded him compensatory and punitive damages.

I.
Grimes joined the East Orange Police Department in 1965 as a patrolman. He advanced through the ranks over the years and in 1987 became Deputy Chief. He has remained in that position since.
George Daher was plaintiff's superior until he retired in February, 1990. Defendant Harry Harman, then a lieutenant on the force, was appointed Acting Chief to replace Daher and in June 1990, his appointment was made permanent.
The parties stipulated that although the practice in East Orange for many years had been that the Chief of Police was appointed by the Mayor and confirmed by the Council, the New Jersey Department of Personnel notified the City after Harman's provisional appointment that the position could only be filled after competitive examination. The City resisted, but unsuccessfully.
The examination was conducted in 1992 and Grimes ranked fourth and Harman sixth of all those who took the test. Three of the top six candidates withdrew their names from consideration; as a result, Grimes and Harman were ranked second and third, respectively, of the final three. Harman was again appointed as Chief, instead of Grimes.
Shortly after his initial appointment in 1990, Harman sent to Grimes a revised job description for the post of Deputy Chief and asked Grimes to submit, within thirty days, a report on management of the force by objectives. Grimes made no objection to the revised job description and did not submit his report until nearly 120 days had expired; it was only three pages long and Harman considered it deficient for it did not address all the areas Harman had specified.

*160 II.
In his own testimony, Grimes complained of certain actions taken by George Daher, Harry Harman and the City that he alleged constituted harassment of him and, he said, evidenced a conspiracy to deprive him of his constitutionally protected rights. He identified specific instances of conduct he considered actionable.

A.
Grimes complained that on certain occasions, when Daher was Chief of Police and was required to be away from the city, Daher appointed officers below Grimes as acting chief in his stead. There was no evidence presented that Daher acted from an improper motive in making these temporary appointments; rather, Daher testified that he had appointed Grimes as acting chief and on his return had found, on occasion, that Grimes had not seen to items that Daher had instructed be taken care of in his absence.
On two occasions when Daher appointed an individual other than Grimes as acting chief, Grimes issued counter orders declaring himself acting chief. In each case, it was necessary for Daher to prepare and circulate countermanding orders. In the second countermanding order, Daher noted that anyone who failed to comply with his order appointing an acting chief would be considered guilty of official misconduct under N.J.S.A. 2C:30-2.
Daher also testified that he considered Grimes a "problem" and that Grimes "always took an adversarial position to anything that you wanted or anything you said." If given verbal orders, Daher said, Grimes wanted "a written order. If you gave him a written order, the spirit of it was that he would not comply or just about complied."
Grimes admitted that after Harman's appointment as chief, Harman did appoint him as acting chief on occasions when Harman was required to be absent; Grimes was appointed acting *161 chief seven times from November 1990 until October 1991 when he filed his complaint.

B.
Grimes also complained that when Harman became chief, he took away from Grimes the unmarked police car that had been assigned to Grimes in his capacity as Deputy Chief. This occurred in July of 1991, after Harman had been chief for more than a year. Grimes was not left without a car, however; he was assigned a marked police car in its place. The two vehicles were comparably equipped and the marked police car was newer than the unmarked car that Grimes had been using.

C.
Grimes also complained that his unmarked car had been equipped with a cellular telephone while the newer, marked police car was not. The cellular telephone in the unmarked car, however, had been out of service for a significant period of time because there was a bureaucratic dispute within the City (not attributable to Grimes) over which municipal office was responsible for payment of the telephone bill. Since the bills had been allowed to accumulate and had not been paid for a significant period of time, service had been discontinued.
Harman directed that that disconnected cellular telephone be removed from Grimes's car and placed into a mobile communications van for use of the entire department. Grimes made no complaint to anyone, prior to filing this complaint, of the removal of the unmarked car or the nonfunctioning, cellular telephone. Grimes admitted that he did not know Harman's motive in transferring the phone but considered it harassment. There was no evidence of any occasions requiring the Deputy Chief and the Chief to communicate by cellular telephone rather than the two-way radio standard to all police vehicles.

*162 D.
After Harman assumed the post of Chief, he undertook both a physical and staff reorganization. As part of that reorganization, Grimes was assigned to a new office on the first floor of police headquarters. Although Grimes made no complaint to anyone at the time of that reassignment, at trial he complained that the office was dirty, smelly and infested with vermin. The office received the regular, periodic extermination service provided throughout the building. Grimes occupied this office from June 1990 until early 1993 when he received a new office assignment.

E.
On October 30, 1991, one day before Grimes's complaint was filed, Harman issued an order to him assigning him to a four day on and two day off schedule, working 7:00 p.m. through 3:00 a.m. The order also created Operation CEACE (Citizens Engaged in Anti-Crime Efforts) for a housing complex known as Arcadian Gardens, the residents of which had been complaining loudly and publicly for some time about the area's extensive crime and drug problems.
Grimes was directed to serve as the catalyst for Operation CEACE, hold monthly meetings with the residents of Arcadian Gardens and, at midnight, conduct a daily physical inspection of Arcadian Gardens, make a record of his findings and report daily to Harman on them. Although Grimes made no complaint to Harman at the time, he testified at trial that he considered it harassment to have him physically inspecting a high-crime area at night. Indeed, in his summation, plaintiff's counsel equated the assignment to the actions of King David in sending Uriah the Hittite into the front lines of battle unprotected. 2 Samuel 11:1-26.

F.
Grimes also testified that he considered it harassment by both Daher and Harman that each, at various times, placed him on *163 night duty although he was Deputy Chief. Both Daher (against whom the trial court dismissed all claims) and Harman testified to the value and purpose of having such a high ranking officer on duty during the night tours.

G.
Grimes also complained that in December 1991, he asked to be permitted to carry over his unused vacation time. Harman denied his request and Grimes took vacation time in December rather than lose it.

H.
Finally, Grimes complained of Harman's appointment as Chief, when Grimes both outranked him and had greater seniority. Grimes alleged that all of the actions of which he complained represented a concerted effort to force him from his post so that Harman could be appointed Chief with no complaint.

I.
We are satisfied that none of these actions, whether singly or in combination, are sufficient to establish a cause of action under 42 U.S.C. § 1983. That statute provides in part:
Every person who, under color of any statute ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....
To establish a claim under 42 U.S.C. § 1983, a plaintiff is required to prove that the defendant acted under color of state law to deprive that plaintiff of a federal statutory or constitutional right. Kirk v. City of Newark, 109 N.J. 173, 185, 536 A.2d 229 (1988); Voges v. Borough of Tinton Falls, 268 N.J. Super. 279, 290, 633 A.2d 566 (App.Div. 1993), certif. denied, 135 N.J. 466, 640 A.2d 848 (1994). 42 U.S.C. § 1983 does not create new federal rights. Rather, it affords a remedy when there has been a violation, under color of state law, of specific, existing federal constitutional or *164 statutory rights. Brown v. Borough of Mahaffey, Pa., 35 F.3d 846, 850 (3d Cir.1994); Hill v. Ibarra, 954 F.2d 1516, 1520 (10th Cir.1992). "The essential element of a § 1983 action is abuse by a state official of his or her official position." Davidson v. O'Lone, 752 F.2d 817, 827 (3d Cir.1984), aff'd 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).
Grimes had no constitutional or statutory right to work only days, to have an unmarked police vehicle at his disposal, to occupy a particular office, to have a cellular telephone, to become, in all instances, acting chief in the absence of the Chief, to accumulate his vacation and, most importantly, had no federal right to be appointed Chief of the East Orange Police Department. He had the right to apply for and be considered for the post; that he was not appointed does not equate with a violation of any federal right.
During the trial, there was evidence that relatives of Grimes were political allies of John Hatcher who was Mayor of East Orange until 1990. There was also evidence that Hatcher's successor, Cardell Cooper, indicated his intention to appoint a Chief of Police who was both black and a resident of East Orange. Both Grimes and Harman fit those qualifications; Daher, who was white, did not. That Harman was selected, rather than Grimes, does not support a finding of any constitutional violation. By placing within the final three, Grimes was eligible to be appointed Chief; he had, however, no right to receive that appointment. N.J.S.A. 11A:4-8.
We stress that Grimes, by virtue of having taken and passed the test, had no protectable right to the post of Chief. "One who successfully passes an examination and is placed on an eligible list does not thereby gain a vested right to appointment. The only benefit inuring to such a person is that so long as the eligible list remains in force, no appointment can be made except from that list." Schroder v. Kiss, 74 N.J. Super. 229, 240, 181 A.2d 41 (App.Div. 1962) (citations omitted).
*165 Plaintiff argued to the jury that the Mayor of East Orange, in some manner, secured the withdrawal of certain of the individuals who scored higher than Harman on the examination and, at the same time, made sure that the individual who scored first remained on the list, all with the view to see to it that Grimes, the next highest scoring person, did not become number one on the list and thus become entitled to priority as a veteran. We do not pass upon the legal strength of that argument (see, e.g., N.J.S.A. 11A:5-7) for it was factually unsupported by any evidence.
Plaintiff also asserts that the actions of these defendants made his working conditions so intolerable it constituted a constructive discharge. Plaintiff has not pointed to a case in which the doctrine of constructive discharge has been applied when the individual who alleges constructive discharge remains in the position, as Grimes still does. We decline to so substantially expand the doctrine.

III.
As noted earlier, when this case commenced, plaintiff also presented certain salary claims for the years 1988, 1989 and 1990. All of those claims the trial court ruled on as a matter of law, dismissing his claim for 1988 and awarding them for 1989 and 1990. The City has appealed solely from the salary award for 1989.

A.
Prior to dealing with the merits of that discrete issue, it must be acknowledged that the salary claim also bore upon Grimes's § 1983 claim for he asserted that the defendants' withholding of his proper salary also violated his federal constitutional and statutory rights. The only actions of the City in this regard that could have such an effect relate to Grimes's 1989 and 1990 salary since the court determined, as a matter of law, he was not *166 entitled to an increase for 1988 and Grimes has not appealed from that determination.
Certain members of the East Orange police force were members of bargaining units; their annual salaries were set following negotiation with the City. Officers holding high rank such as Chief and Deputy Chief had no bargaining unit, however, and had to deal with the City individually on their compensation. This often resulted in lower ranking police, who received annual increases under their union contract, earning more than higher ranking officers.
The City of East Orange created by ordinance a Police Commission to establish rules and regulations for the running of the police department and, according to one of its former members, to set police salaries. The Police Commission, however, has no authority to appropriate funds to pay those salaries. That power is solely vested in the Council.
In 1989, the Commission, after Council passage of the 1989 municipal budget, passed a resolution giving Grimes a salary increase for 1989. That salary increase was never approved by the Municipal Council, however. Grimes contended that passage by the Commission alone was sufficient to entitle him to the increase. Defendants, on the other hand, argued that since it was never approved by the Council, it was a nullity.
In 1990, the Commission submitted a recommended budget for the department that included Grimes's 1989 salary increase. The budget that was approved by the Council included that increase. By that time, however, Grimes was embroiled in a dispute with the City and has never received those funds. One of the defendants' own witnesses testified that a city employee is entitled to a retroactive pay raise if the City Council allocates money for it in a later year.
We decline to disturb the trial court's ruling that this testimony established Grimes's entitlement to this 1989 salary increase.
*167 We are not at all persuaded, however, by Grimes's argument, presented below and repeated on appeal, that defendants' effort to achieve an overall resolution of all of Grimes's claims, including his salary claims, in some manner either deprived him of any federal rights or evidenced a conspiracy to do so.

IV.
Because we are satisfied that Grimes wholly failed to establish the necessary elements of a § 1983 cause of action, it is unnecessary to deal with defendants' argument that the trial court improperly entered judgment against Harman individually, rather than in his official capacity. This is so because the October 19, 1994 Order on the salary claims directed those amounts be paid by East Orange; it imposed no liability on Harman.
Since we have concluded that plaintiff failed to establish a cause of action under 42 U.S.C. § 1983, it must follow that the award of counsel fees to plaintiff's counsel made by the trial court under 42 U.S.C. 1988 must also be set aside.
Finally, turning to plaintiff's cross-appeal, we consider plaintiff's contention that the trial court erred when it refused to permit him to amend his complaint to assert an entirely new cause of action never pled, argued or proven, after the jury returned its verdict, to be entirely without merit. R. 2:11-3(e)(1)(E). "An appropriate regard for the orderly judicial process requires that parties be given a fair opportunity to pass on points critical to their cases." Rivera v. Gerner, 89 N.J. 526, 538, 446 A.2d 508 (1982).
This matter is affirmed in part and reversed in part and remanded for entry of a corrected judgment in accordance with this opinion.