925 A.2d 733 (2007)
394 N.J. Super. 179
Mohammad F. AHAMMED, Plaintiff-Appellant,
v.
Jeffrey P. LOGANDRO and Anthony J. Logandro, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued April 24, 2007.
Decided June 27, 2007.
Veronica A. Bocco argued the cause for appellant (Richard P. Console, Jr., Mt. Laurel, attorneys; Mr. Console, on the brief).
*734 Susan L. Moreinis, Collingswood, argued the cause for respondents.
Before Judges SKILLMAN, HOLSTON, JR. and GRALL[1].
The opinion of the court was delivered by
HOLSTON, JR., J.A.D.
This is an automobile accident personal injury negligence case. Plaintiff, Mohammad Ahammed, appeals the Law Division's January 19, 2006 order denying his motion to strike defendant Jeffrey P. Logandro's affirmative defense that plaintiff's cause of action is barred by the exclusive remedy contained in N.J.S.A. 34:15-8, the fellow-servant provision of the Workers' Compensation Act (the Act), N.J.S.A. 34:15-1 to -128. Plaintiff also appeals the April 28, 2006 order granting summary judgment to defendant and dismissing plaintiff's cause of action with prejudice. Plaintiff contends that because defendant participated in mandatory arbitration without raising the defense of the worker's compensation bar, stated in his answer to an interrogatory question that the only statutes upon which he would rely were sections of the motor vehicle code, and defense counsel knew that plaintiff's counsel would continue to engage in costly discovery in preparation for trial, defendant should be deemed to have waived his right to assert the affirmative defense. Based upon equitable and public policy considerations which we will discuss herein, we disagree with plaintiff's argument and affirm.
On January 2, 2002, plaintiff was involved in a motor vehicle accident with defendant. Plaintiff was operating his personal automobile and exiting a strip mall where his employer, Domino's Pizza (Domino's), was located. Defendant, also an employee of Domino's, was entering the mall operating a car owned by his father, Anthony Logandro, when the collision occurred.[2] Both were employees of Domino's and were acting in the course of their employment at the time of the accident. Although each knew that the other worked as a pizza delivery driver for Domino's, neither knew that the other was actually in the course of his employment at the time of the accident.
Domino's was insured for workers' compensation by Selective Insurance Company (Selective). Plaintiff was insured for personal injury protection (PIP) benefits through his personal automobile liability policy with State Farm Insurance Company (State Farm). Defendant, as a permissive user of his father's vehicle, was insured for liability through his father's automobile liability policy with AAA Mid-Atlantic (AAA).
Shortly after the accident, plaintiff retained Richard P. Console, Jr., Esquire, to pursue a claim for damages for his personal injuries. On January 28, 2002, Console sent a letter to Domino's advising it of his representation of plaintiff, as a result of plaintiff's automobile accident with its employee, defendant. The letter stated:
And as a result the negligence of Logandro is imputed to Domino's Pizza, and we would therefore ask that you forward this letter to your insurance carrier to get in touch with us within the next ten days to discuss the matter.
*735 In his March 22, 2006 deposition testimony, Brian Evringham, the owner of the Domino's franchise where plaintiff and defendant worked and thus the employer of both, testified that a couple of weeks after being informed of the accident he reported the accident to Selective. He was confident that he had forwarded Console's January 28, 2002 letter to Selective. Selective wrote a letter acknowledging Evringham's report, which was followed by an inquiry from a Selective adjuster.
By letter dated February 4, 2002, Jenna Erbs, a claims representative for Selective, wrote a letter to plaintiff at his home address informing him that she was the adjuster for Domino's insurance carrier. She advised plaintiff that Selective was aware of his involvement in a "work-related" automobile accident on January 2, 2004 and that plaintiff should contact her to discuss the details of his claim and of any benefits to which he might be entitled. She informed him that under the workers' compensation statute, Selective had the right to choose his treating physician. Thus, he should contact her for referral to an authorized doctor.
Evringham testified that plaintiff and defendant, as pizza delivery drivers, are paid an hourly rate, receive tips, are compensated for the use of their car, and are not permitted to work for another pizza company while employed at Domino's. Evringham confirmed that both drivers were paid by check, payroll taxes were deducted, and they were issued a W-2. Evringham verified that both drivers were in the course of their employment at the time of the accident.
On February 27, 2002, Console followed up on his January 28, 2002 letter to Domino's. He enclosed a copy of the police report, asked Domino's to put its insurance carrier on notice, and requested that the carrier contact him as soon as possible.
Plaintiff filed a personal injury negligence complaint against defendant on October 29, 2003. Domino's was not a named defendant. Plaintiff's complaint did not indicate that he was in the course of his employment with Domino's when the accident occurred.
In December 2003, Console wrote to AAA to "present and settle" plaintiff's personal injury claim. He included a medicals package, which contained invoices from medical providers, all of which had been paid by State Farm. On January 7, 2004, AAA adjuster, Alicia Gatt, replied to Console's letter. She requested Console to clear up the issue of compensation eligibility with documentation. She asked for clarification because in her file notes was a Selective written communication of March 22, 2002, placing AAA on notice of a workers' compensation lien.
On January 28, 2004, Console forwarded a letter to AAA enclosing written confirmation from Selective that there was no workers' compensation lien, as Selective had paid no benefits. Console requested AAA's best offer to resolve plaintiff's personal injury claim. Gatt confirmed with Console's office on February 25, 2004 that plaintiff had received PIP benefits from State Farm, not workers' compensation, and requested a copy of the declaration page and tort threshold from State Farm. On March 4, 2004, AAA denied plaintiff's claim based on Gatt's opinion that plaintiff had failed to pierce the verbal threshold.
Upon receipt of the summons and complaint, the file was transferred to AAA's counsel, Nicholas Benedetti, Esquire. He reviewed the file and discussed the matter with Gatt. The discussion included all possible defenses, as well as the exchanges in Gatt's file between Selective, Console and AAA.
*736 On February 5, 2004, Benedetti filed an answer to the complaint on behalf of defendants, which included as a seventeenth separate defense, "[p]laintiff's action is barred by the provisions of the New Jersey Workers' Compensation Act, [N.J.S.A.] 59:8-1 et seq.[,] and these defendants reserve the right to move to dismiss the complaint."
On March 26, 2004, defendant answered plaintiff's interrogatory question asking defendant to enumerate the statutes he would rely upon. Defendant listed four motor vehicle statutes that plaintiff violated. He did not list the fellow-servant provision of the Act.
On May 11, 2004, Benedetti received plaintiff's verified answers to Form A interrogatories. Plaintiff answered that he was employed by Domino's at the time of the accident. Plaintiff made no claim for lost earnings. Consequently, Benedetti did not serve a request for plaintiff to produce proof of his employment, earnings or tax returns.
On December 7, 2004, plaintiff testified at his deposition that at the time of the accident he was working for Domino's. Benedetti, however, made no inquiry as to whether plaintiff was in the course of employment for Domino's at the time of the accident. At defendant's deposition taken the same day, defendant acknowledged that at the time of the accident he was working for Domino's.
Prior to the start of plaintiff's and defendant's depositions, Benedetti requested confirmation from Jeffrey Stone, Esquire, plaintiff's counsel at the depositions, that plaintiff was not eligible for workers' compensation benefits. According to Benedetti, Stone told him plaintiff was an independent contractor "just like all pizza deliverymen are and not eligible for workers' comp." As a result of that conversation, Benedetti testified that the existence of the workers' compensation defense "went out of my mind. . . . I didn't think I had a workers' comp defense." Benedetti in later testimony elaborated:
At the deposition, I asked Mr. Stone, was your client eligible for Workers' Comp; why didn't you go Worker's Comp. Questions along those lines. Why did you go PIP. . . . And that's when he said to me that his client was not eligible for Worker's Comp. His client was an independent contractor just like all pizza delivery men are independent contractors.
. . . .
I remember that exactly. I remember that phrase exactly. "just like all pizza delivery men." That's what it was. "He's an independent contractor, just like all pizza delivery men." I remember that exactly.
Stone indicated to Benedetti that he himself had delivered pizzas and his own status had been that of an independent contractor. Benedetti stated that this "fit" with what he knew from the representations made by Console prior to litigation and in written discovery.
Stone's version of the conversation was similar. He confirmed that Benedetti inquired as to why plaintiff sought PIP benefits instead of workers' compensation benefits. However, Stone, in answer to the question "Did you have any information that Mr. Ahammed was an employee of Domino's or an independent contractor," testified:
Never  I never even thought about it. In the conversation with Mr. Benedetti, I never ever represented either way because I would not  I would not have had any idea. I do remember in fact when he spoke, I told Nick Benedetti that I had been a pizza delivery guy for four or five years myself during my teen years, *737 and that I know I got paid under the table. I never got in an accident or got hurt or anything, . . . but I knew in retrospective, of course, I was an independent contractor.
Nevertheless, when queried, "Did he ask you was [plaintiff] an independent contractor or an employee of Domino's Pizza," Stone replied:
I remember those words coming up during the conversation, and that's what led me to think back on my own pizza delivery days and comment on my own status. So that's why I did comment on my own status. . . . We talked about that for a minute or so.
But, no, I did not ever represent either way what Mr. Ahammed's status was, and I could not have because I did not know. And, in fact, a Workers' Comp bar was never mentioned by Mr. Benedetti at that time. He had an interest in why PIP had paid. And as I say, I mentioned election of remedies and assumed we'd be going into this deposition and finding out maybe more about what this was all about.
On August 2, 2005, the parties participated in mandatory arbitration pursuant to Rule 4:21A-1(a)(1). Benedetti did not argue to the arbitrators that plaintiff's cause of action was barred by the Act. The arbitrators found defendant to be 90% at fault and plaintiff to be 10% at fault and awarded plaintiff a net damages award of $68,500. A demand for trial de novo was filed by Benedetti on August 29, 2005. On October 11, 2005, Benedetti filed an offer for judgment for $30,000.
After the trial date was set for November 1, 2005, Benedetti began preparing for trial. He received the Selective file from the AAA claim's representative and saw, for the first time, the February 4, 2002 letter from Selective to plaintiff, acknowledging that plaintiff was eligible for workers' compensation benefits as a Domino's employee. On October 21, 2005, Benedetti withdrew the offer for judgment and on October 25, 2005, faxed and mailed Console the following letter:
In my Answer and Separate Defenses filed on February 5, 2004, I asserted the defense of "17. Plaintiff's action is barred by the provisions of the New Jersey Workers Compensation Act, [N.J.S.A.] 34:15-7 et seq."
Please be aware I will assert this defense at the trial on November 1, 2005.
Benedetti's letter of October 25, 2005 was the first time, except as a separate defense in defendant's answer to plaintiff's complaint, that defendant asserted this defense.
As a result, on November 14, 2005, plaintiff filed a notice of motion to strike defendant's defense based on the bar of the Act. Judge Kassel determined that, before he could rule on the issue, a plenary hearing was required, so that he could make a factual determination as to the nature and scope of the conversation between Benedetti and Stone prior to the December 7, 2004 depositions of plaintiff and defendant.
The judge framed the issue as whether the belated assertion of the workers' compensation defense by defendant should be deemed as having been waived, based on this court's decision in White v. Karlsson, 354 N.J.Super. 284, 806 A.2d 843 (App. Div.), certif. denied, 175 N.J. 170, 814 A.2d 635 (2002). The applicability of White depended in Judge Kassel's view on judicial factfinding: "[D]id Mr. Stone, on behalf of [plaintiff] represent to Mr. Benedetti, on behalf of [defendant,] that the plaintiff was an independent contractor, thereby leading the defense to believe that the workers' comp. file [from Selective] was not applicable."
*738 During the January 19, 2006 plenary hearing, Judge Kassel heard the testimony of Benedetti and Stone, as recited above, and credited Benedetti's version of the deposition date conversation between him and Stone. On January 19, 2006, Judge Kassel signed an order denying plaintiff's motion to strike the workers' compensation defense.
On March 2, 2006, defendant filed a motion for summary judgment based on the bar of the workers' compensation statute. Judge Kassel permitted the parties to take discovery on the issue of whether the parties at the time of the accident were co-employees in the course and scope of their employment. Evringham's March 22, 2006 deposition testimony establishing plaintiff's and defendant's co-employee status followed. On April 1, 2006, defendant was granted summary judgment as a matter of law based on the workers' compensation bar to a common law negligence cause of action against a co-employee. Plaintiff's complaint was dismissed with prejudice.
On June 2, 2006, a notice of appeal was filed from the April 28, 2006 summary judgment order. However, plaintiff's case information statement makes clear that the appeal is directed primarily at Judge Kassel's decision on the waiver issue memorialized in the January 19, 2006 order denying plaintiff's motion to strike the affirmative defense. Accordingly, we will consider the propriety of both orders as properly before us for consideration. See Rule 2:5-1(f).

I.
Plaintiff contends Judge Kassel erred in allowing the late assertion by defendant of the affirmative defense that the fellow-servant provision of the Act barred plaintiff's claim. Plaintiff contends defendant waived his right to claim the defense by not asserting it, except in his February 5, 2004 answer to the complaint, until Benedetti's letter of October 25, 2005, just ten days before the November 1, 2005 scheduled trial date. Plaintiff relies on our decision in White, supra, in support of his contention.
White was an automobile accident personal injury action, in which, a week before trial, the defendant's attorney moved for summary judgment asserting that the plaintiffs' claims were barred by the statute of limitations. 354 N.J.Super. at 286, 806 A.2d 843. The plaintiffs' attorney admitted the late filing of the complaint, but argued the defense had been waived. The judge granted summary judgment. We disagreed and reversed. Ibid.
The automobile accident occurred on January 23, 1998. The plaintiffs retained an attorney promptly, who sent a claim letter to the defendant's insurance company in March 1998. From April 1998 to September 1999, the insurance company for the defendant corresponded with the plaintiffs' attorney and its insured, gathering information about the accident and the plaintiffs' injuries. The plaintiffs filed the complaint on February 22, 2000, two years and twenty-nine days post-accident and served the insurance carrier June 26, 2000. The defendant filed her answer July 12, 2000, asserting eighteen affirmative defenses including the bar of the statute of limitations. Following discovery, on January 4, 2001, the case underwent mandatory arbitration pursuant to Rule 4:21A-1(a)(1), where the defendant's attorney did not assert that the action was barred by the statute of limitations. After an arbitration award favorable to the plaintiff, the defendant's attorney filed a timely demand for trial de novo and continued to engage in discovery. On February 12, 2001, the defendant answered the plaintiffs' interrogatory question indicating the only statutes *739 she intended to rely on were "N.J.S.A. 39:1-1 et seq." Defense counsel deposed the plaintiff without inquiring as to a potential statute of limitations defense. At the same time, the plaintiffs' counsel began acquiring and paying for expert reports. Discovery was extended twice thereafter, the last time until June 15, 2001, and a trial date was set for June 25, 2001. It was not until June 28, 2001 that the defendant's attorney finally served a motion for summary judgment based on the bar of the statute of limitations contained in N.J.S.A. 2A:14-2. Id. at 286-88, 806 A.2d 843.
Based on the Supreme Court's rationale in Williams v. Bell Telephone Laboratories, Inc., 132 N.J. 109, 118-20, 623 A.2d 234 (1993), we held in White that the defendant had a fair opportunity to defend the plaintiffs' claim through her insurance company, beginning within a few months of the accident, and through her attorney, following the filing of the plaintiffs' complaint. White, supra, 354 N.J.Super. at 292, 806 A.2d 843. We, therefore, declined to apply strictly and uncritically a statutory period of limitations when its "mechanistic" application would inflict obvious and unnecessary harm upon the plaintiffs in view of defendant's unreasonable delay in moving for dismissal until the eve of the date set for trial, given the numerous opportunities she had prior thereto to serve such a motion. Ibid.; see also Price v. N.J. Mfrs. Ins. Co., 182 N.J. 519, 867 A.2d 1181 (2005); Zaccardi v. Becker, 88 N.J. 245, 440 A.2d 1329 (1982); cf. Torcon, Inc. v. Alexian Bros. Hosp., 209 N.J.Super. 239, 507 A.2d 289 (App.Div.), certif. denied, 104 N.J. 440, 517 A.2d 431 (1986).
We must, therefore, determine whether defendant should be deemed to have waived the affirmative defense of the bar of the Act as an extension to our holding in White or whether other factors found by the trial court to have caused defense counsel to refrain from asserting the defense by a dispositive motion earlier in the litigation should cause us to weigh the equities of the continuing viability of the defense of the Act's bar in defendant's favor. Our decision partly rests on an examination of the policy reasons for the Legislature's enactment of the "fellow-servant" rule, which operates to bar plaintiff's complaint against defendant. N.J.S.A. 34:15-8.
Ordinarily the Act provides the exclusive remedy for an employee who sustains an injury in an accident that arises out of and in the course of employment. N.J.S.A. 34:15-8; Danek v. Hommer, 9 N.J. 56, 62, 87 A.2d 5 (1952). In 1961, N.J.S.A. 34:15-8 was amended to provide immunity for co-employees from actions at common law by injured co-employees. L. 1961, c. 2, p. 14 § 1; Conrad v. Robbi, 341 N.J.Super. 424, 438, 775 A.2d 562 (App. Div.) certif. denied, 170 N.J. 210, 785 A.2d 438 (2001). The amendment is commonly referred to as the fellow-servant rule.
The purpose of the amendment was not so much to protect the fellow servant from liability as it was to protect the employer from paying twice, once through compensation and a second time through indemnification of the fellow servant against the injured employee's judgment. Conrad, supra, 341 N.J.Super. at 438, 775 A.2d 562. Thus, the amendment was adopted by the Legislature to prevent "burdening the employer indirectly with the common-law damages superimposed upon his workmen's compensation liability by reason of either a legal, moral or practical obligation to indemnify the sued . . . employee, or with the expense of carrying insurance to cover the personal liability of such . . . personnel." Miller v. Muscarelle, 67 N.J.Super. 305, 321, 170 A.2d 437 (App. *740 Div.), certif. denied, 36 N.J. 140, 174 A.2d 925 (1961).
In the interrogatory answers of plaintiff and defendant, both confirmed they were employed by Domino's. In their December 2005 depositions, each answered that they were in the course of their employment as pizza delivery drivers at the date and time of the accident. Therefore, unless equitable considerations applicable in White give rise to the conclusion that defendant waived the workers' compensation bar as a defense, there is no factual dispute that the exclusivity of the Act, as embodied in the "fellow-servant" rule, immunizes defendant from liability for negligence to plaintiff. This is particularly true because the uncontradicted deposition testimony of Evringham clearly establishes (1) that neither man was an independent contractor but each was a W-2 wage earning employee of Domino's and (2) that both were engaged in their employment at the time their two vehicles collided.
Generally, the matter of the waiver of an affirmative defense depends on principles of equity and public policy. Plaintiff, citing to White, supra, argues that defendant failed to cite factual support for the workers' compensation defense in his answer to the complaint and in his answers to interrogatories. We note, however, that while Rule 1:4-8 and Rule 4:5-8 require a specific representation regarding the factual or legal basis for an asserted defense and Benedetti did not do so, the failure to do so does not in and of itself constitute a waiver of an asserted affirmative defense. See Rivera v. Gerner, 89 N.J. 526, 535, 446 A.2d 508 (1982).
In White, we noted that no developments intruded into that litigation to inhibit defendant's pursuit of the statute of limitations defense. Judge Kassel held that White did not apply because of his accreditation of Benedetti's version of his deposition date conversation with Stone. The judge noted that the only purpose of such a conversation could be to assure the defense that the bar of the fellow-servant rule did not apply. The judge determined that it was clear such representation "inhibited" defendant's pursuit of the defense. The judge, in effect, determined that equitable principles favored the assertion of the defense.
We have thoroughly examined the record of the plenary hearing conducted before Judge Kassel. We are satisfied that the judge's finding that Stone's remarks lulled Benedetti into believing that there was no viable workers' compensation defense because plaintiff as a pizza delivery driver was an independent contractor and not a W-2 employee, to whom the fellow-servant rule of the Act applied, is supported by substantial credible evidence in the record. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84, 323 A.2d 495 (1974).
Additionally, unlike the statute of limitations addressed in White, supra, workers' compensation immunity is distinguishable from statute of limitations immunity based on public policy principles. First, with respect to the limitations of action defense, the plaintiff has a cause of action until the day after the applicable statute lapses. As White made clear, the equities inherent in the delay of counsel in serving a dispositive motion cause the statute to render void "an otherwise legitimate claim." Id. at 290, 806 A.2d 843. However, with respect to the workers' compensation defense, when, as here, co-employees are both in the course of their employment when an accident occurs, the plaintiff never, at any time, has a legitimate common law negligence cause of action against the defendant. See Rivera, supra, 89 N.J. at 535, 446 A.2d 508 (Tort Claims Act damages threshold); Jackson v. Hankinson, 94 *741 N.J.Super. 505, 513-14, 229 A.2d 267 (App. Div.1967), aff'd, 51 N.J. 230, 238 A.2d 685 (1968) (governmental immunity).
Second, absent a tolling issue, the facts supporting a statute of limitations defense are obtainable at the outset of litigation by all parties simply by phoning the clerk of the court or noting the date stamp on the complaint. Under the circumstances of this case, the facts supporting the defense of workers' compensation immunity were largely within the knowledge of plaintiff, who, despite correspondence from Selective to the contrary, repeatedly through his counsel presented his case to defendant's insurance company and to defense counsel as one where the bar did not apply.
The basis of the White opinion was equitable, i.e., that defendant's behavior led the plaintiff to the reasonable conclusion that the defendant had no objection to the continuation of the case. Id. at 291, 806 A.2d 843. Here, the contrary was true. Plaintiff's counsels' behavior led defendant's counsel to the reasonable belief that no such defense was available.
We are satisfied that the equities do not support a finding of waiver of the workers' compensation defense to plaintiff's negligence complaint, based on the facts as found by Judge Kassel and on the public policy underpinnings of the fellow-servant rule. As there are no genuine issues of material fact, defendant is entitled to judgment as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29, 666 A.2d 146 (1995).
Affirmed.
NOTES
[1] Judge Grall did not participate in oral argument. However, with the consent of counsel, she has joined in this opinion. R. 2:13-2(b).
[2] The court granted Anthony Logandro's motion for summary judgment dismissing plaintiff's complaint against him because at the time of the accident Anthony Logandro did not have a respondeat superior relationship with his son.