**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3657-17T2

BERLIN CROSS KEYS
SHOPPING CENTER
ASSOCIATES, LLC,

     Plaintiff,

v.

STEPHEN SAMOST,
ESQUIRE, and LAW OFFICE
OF STEPHEN SAMOST,

     Defendants/Third-Party
     Plaintiffs,

and

SAMINVEST CO., LLC,

     Defendant/Third-Party
     Plaintiff-Respondent,

v.

WALMART STORES, INC.,
WALMART REAL ESTATE
BUSINESS TRUST,

     Third-Party Defendants-
     Appellants,

and

CARL FREEDMAN, MITCHELL
COHEN, SCOTT CIOCCO,
and MARK ARENCIBIA,

     Third-Party Defendants.
_____

Argued March 25, 2019 – Decided April 26, 2019

Before Judges Haas and Mitterhoff.

On appeal from Superior Court of New Jersey, Law
Division, Camden County, Docket No. L-5114-12.

Donald A. Rea (Saul Ewing Arnstein & Lehr LLP) of
the Maryland bar, admitted pro hac vice, argued the
cause for appellants (Saul Ewing Arnstein & Lehr LLP,
attorneys; Amy L. Piccola, Donald A. Rea, and Jordan
D. Rosenfeld (Saul Ewing Arnstein & Lehr LLP) of the
Maryland bar, admitted pro hac vice, on the briefs).

Peter J. Boyer argued the cause for respondent (Hyland
Levin LLP, attorneys; Peter J. Boyer and Megan
Knowlton Balne, on the brief).

PER CURIAM

     Third-party defendants Walmart Stores, Inc. and Walmart Real Estate

Business Trust (collectively "Walmart") appeal from the trial court's denial of

its motion for summary judgment and motion for a directed verdict. Following

a five-day trial, the jury returned a $500,000 verdict in favor of third-party

plaintiff Saminvest Co., LLC ("Saminvest") on its claim against Walmart for

fraudulent misrepresentation. On appeal, Walmart argues that the trial court erred in ruling that Saminvest's claim was not barred by the statute of limitations. For the reasons that follow, we remand.

I.

A.

We glean the following facts from the trial record. This case stems from a real estate contract dispute. Stephen Samost has been a licensed attorney in New Jersey since 1983 and has experience in real estate law, tax law, and land use law. Samost is a principal of Saminvest, a real estate investment company.

In 2005 and 2006, Saminvest, through Samost, was involved in negotiations with Berlin Cross Keys Shopping Center Associates ("BCKA") regarding the development and construction of a shopping center on a property owned by Saminvest in the Borough of Berlin, New Jersey. The proposal was initially structured as a three-way development involving Saminvest as the landowner, BCKA as the developer, and Walmart as an anchor tenant.

Initially, Saminvest and BCKA executed a purchase agreement for BCKA to purchase the entire property, and BCKA separately negotiated with Walmart for Walmart to purchase a portion of property to construct a Walmart store. During these negotiations, Walmart employed engineers to determine the

feasibility and plans for developing its portion of the property. With Samost representing BCKA as its land use counsel, BCKA obtained zoning approvals from the Berlin Borough Planning Board for a "big box" retail store on the property.

While the proposals were being considered by the Planning Board, hundreds of objectors attended the public hearing regarding the proposals. After the Planning Board approved the projects, some objectors filed actions in lieu of prerogative writs in the Superior Court to block the development. Samost appeared on behalf of Saminvest to oppose the objectors' challenges.

While the Superior Court actions were pending, it became apparent that BCKA was no longer financially able to move forward with the deal. Thereafter, in or around September 2007, Samost began engaging in discussions with Walmart's attorneys and Matt Sitton, a Walmart real estate manager, about Walmart purchasing the property directly from Saminvest. Samost testified that during a phone call in or around November 2007, Sitton orally agreed that Walmart would purchase the entire property for $8.6 million after all of the appeals of the zoning approvals had been exhausted and successfully resolved. Additionally, Samost testified that the parties agreed that Walmart could terminate the agreement if (1) the property was condemned or sold to the

Borough or County in lieu of condemnation, or (2) the zoning appeals were not final and un-appealable by December 31, 2009.

Samost testified that around this time, Sitton requested that the parties execute a letter of intent. Samost, however, declined to execute a letter of intent, because he felt the deal was "way further down the road than a letter of intent" and instead wanted to execute a final purchase agreement. Samost testified that Walmart did not want to execute a purchase agreement because it "was concerned about being viewed as a stalking horse by the County or the Borough." Specifically, Berlin Borough and Camden County were considering whether to seek that the property be condemned and had been negotiating with Samost to purchase the property in lieu of condemnation. Samost testified that Walmart was concerned it would "be seen as driving up the price . . . and causing difficulty for the County." Nonetheless, Samost testified that he was satisfied that he and Sitton had agreed to the terms of the transaction during the November 2007 phone call.

Through discovery in the instant matter, Samost obtained a draft of a non-binding letter of intent dated November 1, 2007, which Walmart prepared but neither executed nor sent to Samost. The letter contained the $8.6 million dollar purchase price, noted that closing was conditioned on Saminvest obtaining all

A-3657-17T2

final zoning approvals and the appeals being successfully resolved, and provided that Walmart could terminate the agreement if all final approvals had not been obtained by December 31, 2009. The letter also included exculpatory language noting that it did "not constitute an offer by Wal-Mart to purchase the Property on the terms set forth" and that the parties would not "be bound to any obligation, one to the other, unless and until a written purchase agreement is mutually executed and delivered."

Based on the oral agreement with Sitton, Samost continued to defend the zoning appeals. On March 25, 2008, the Law Division entered a final judgment affirming the Planning Board's approval of the site plans. That same day, counsel for Walmart wrote Samost a letter, stating in relevant part:

> We have been informed by Wal-Mart that an article appeared in the Courier Post this morning that indicates the Superior Court of New Jersey recently upheld an appeal of the Berlin Borough Planning Board's approval of a Wal-Mart Supercenter on the above referenced property.
> As you are aware, Wal-Mart had the right to purchase the property, or take an assignment of the right to purchase the property, from [BCKA]. It was Wal-Mart's understanding that [BCKA] had terminated its contractual rights and Wal-Mart's contractual rights regarding the property had terminated with [BCKA's].
> Accordingly, Wal-Mart believes that it has an obligation to inform the Court, and any interested parties, that it no longer has any interest in the property.

A-3657-17T2

If it is your position that Wal-Mart still has a legal interest in the property, please immediately advise as to the nature of that interest. Otherwise, we will be informing the Court, and the interested parties, that Wal-Mart's interest in the property has been terminated.

Samost responded via letter the next day, March 26, stating:

I am in receipt of your letter of March 25, 2008. For a number of reasons, I do not think it is necessary for you to contact the Court. As various representatives of Walmart can attest, given their presence at the hearings that were held before the Berlin Planning Board with respect to the development application, the record is replete with statements and letters from me – as well as correspondence from Walmart itself – that Walmart did not have an agreement to acquire the property. . . .

I spoke with [Walmart's outside counsel], Matt Sitton, and [Walmart's real estate broker] a few months ago about these matters. My understanding, as a result of those conversations, was that Walmart did not want to be a "stalking horse" in this matter, and it understood that the Borough was acquiring the property. As I stated then, and restate again today, there is no agreement with Berlin Borough (or any other governmental agency) to acquire the property. There have been discussions; however, they have been consistent in lacking a commitment with respect to a critical element of the agreement – money.

If, as I have stated, and as Walmart has previously set forth in correspondence to the Berlin Borough Planning Board, Walmart did not have an agreement to acquire the property, but rather might do so in the future, then there is nothing different today than there was when this matter was before the Berlin Borough Planning Board. As you know the lawsuits challenged the action of the Planning Board were based

on the record, and Walmart's position is clearly stated on the record.

Samost testified that when writing this letter, he understood that Walmart still wanted to avoid any ill will with the County and Borough.

Samost also testified that after Walmart received the March 26 letter, Sitton called him and reiterated that Walmart would proceed with the $8.6 million purchase price once the zoning appeals were exhausted, and provided that the County did not condemn the property or reach an agreement in lieu of condemnation with Saminvest. Samost contends that this conversation is referenced in an email exchange dated March 28, 2008 between Jeff Cohen, Walmart's real estate broker, and Sitton, in which Sitton confirms to Cohen that he called Samost. The email, however, does not mention what Sitton and Samost discussed.

Unbeknownst at the time to Samost, after the parties exchanged letters, Walmart prepared a letter to the Mayor of Berlin Borough. In pertinent part, the letter states:

> Recent newspaper stories have stated that the Superior Court of New Jersey has upheld the planning board's approval of the project. They further state that a bank, restaurant and a Wal-Mart with grocery store are targeted for the property, suggesting that construction may begin shortly. To the extent the articles suggest construction of a Wal-Mart Supercenter will begin on

A-3657-17T2

the property, the articles are incorrect. While the appeal was pending, Wal-Mart's negotiations with the property owner and developer terminated, without a contract. <u>At this time, Wal-Mart will not be moving forward with the project</u>.

[(emphasis added).]

Through discovery in the instant matter, it was revealed that the original draft of Walmart's letter closed with the final sentence: "Accordingly, Wal-Mart no longer has intent to construct a store on the property." As reflected in emails exchanged on March 27 and 28, 2008 between Sitton, other Walmart employees, and Walmart's counsel, the final sentence was edited to the language emphasized above at the request of Sitton. Walmart did not provide Samost a copy of this letter to the Samost, nor did Samost know the letter had been sent to the Mayor.

On April 2, 2009, the Supreme Court denied the objectors' petition for certification. On April 13, Samost emailed Jeff Cohen, Walmart's real estate broker, attaching the order denying certification and stating, "If Walmart's attorneys need anything else, then please advise." After not receiving a response, Samost called Cohen about one month later to discuss the court ruling and to confirm that Saminvest was prepared to move forward with the transaction. In a May 13, 2009 email exchange with the header "Samost called," Cohen asked Sitton, "What should I tell him?" Sitton responded, "What are the

economics?" Cohen responded to Sitton, "You know Steve. He wants the same deal as before."

On July 20, 2009, Samost emailed Cohen to discuss applying for funds from the proposed New Jersey Stimulus Bill. Within this email, Samost stated, "The threshold determination that must be made is whether Walmart is interested in moving forward with the property." Thereafter, Walmart declined to proceed with a closing on the property.

## B.

On December 3, 2012, BCKA filed a complaint against Stephen Samost, Esq., the Law Office of Stephen A. Samost and Saminvest ("Samost parties"). On November 20, 2014, the Samost parties filed a third-party complaint joining Walmart and other parties.[1] On May 26, 2016, the Samost parties amended the third-party complaint to add new claims, including a claim for fraudulent misrepresentation based on Sitton's oral promise to Samost.

After the close of discovery, Walmart filed a motion for summary judgment. Walmart argued that New Jersey's six-year statute of limitations for fraud barred Saminvest's claims against Walmart. The trial court denied the motion on March 3, 2017. The judge found that a jury reasonably could

---

[1] The claims against the other parties were later dismissed.

A-3657-17T2

conclude that during the phone call between Sitton and Samost after the exchange of the March 2008 letters, Sitton reaffirmed Walmart's agreement to purchase the property after the zoning issues had been exhausted.

The judge further concluded that based on Walmart's revision of its letter to the Berlin Borough Mayor to read "[a]t this time, Walmart will not be moving forward with the project," a jury reasonably could find that Walmart's letter was consistent with the terms of the alleged oral promise from Sitton to Samost because such a deal would have been contingent on the resolution of the zoning appeals. Ultimately, the judge concluded:

> [I]t's going to come down to credibility and that's not my -- you know, bailiwick is to try and determine credibility. That's not what I'm here to do. . . . So based on my ruling that I believe reasonable inferences can be drawn that there was that agreement still in existence even after the March 26th, 2008, letter of Mr. Samost, . . . the Statute of Limitations arguments fall.

Prior to trial, all claims were settled except for Saminvest's claims against Walmart. Between February 27 and March 9, 2018, a five-day jury trial was held on Saminvest's remaining claims against Walmart. Saminvest primarily sought to recover the difference between the $8.6 million sale price promised

11

by Walmart, and the current value of the property, which Saminvest's expert calculated to be $1.72 million.[2]

At the close of Saminvest's case-in-chief, Walmart moved for a directed verdict based on the statute of limitations, which the trial court denied. In denying the motion, the trial judge reiterated that a jury could reasonably infer that Walmart was still abiding by Sitton's oral promise to purchase the property once the zoning appeals were exhausted from the language Walmart used in its March 25, 2008 letter to Samost and from Sitton's phone call to Samost after the exchange of those letters. The trial judge reasoned:

> [E]ven if Mr. Samost says this on the 26th, if on the -- later that day or on the 27th, Mr. Sitton reconfirms their agreement it's still on, we're still going to move forward, a jury could conclude that and he doesn't have an issue. So it's based on . . . those findings that are in the record that I believe a jury could determine that Mr. Samost did not have all the facts present to him that would have been necessary for him to believe that he had a cause of action that he had to pursue at that time. So that's why I'm going to deny that application.

Walmart renewed its motion for a directed verdict at the close of all of the evidence, and the trial court again denied the motion. The trial court did not make any new findings in denying this motion.

---

[2] Walmart's expert calculated the current value of the property to be $6.5 million.

The jury returned a verdict in favor Saminvest in the sum of $500,000 on its fraudulent misrepresentation claim, but found in favor of Walmart on all other claims. On April 13, 2008, the trial court entered an order amending the final judgment to add $38,352.70 in prejudgment interest. This appeal followed.

## II.

### A.

On appeal, Walmart contends that the trial court erred in denying its motion for summary judgment and motion for a directed verdict, because Saminvest's fraudulent misrepresentation claim was barred by the six-year statute of limitations for fraud.[3] Walmart argues that even with the benefit of the discovery rule, Samost reasonably should have known that Walmart disavowed any agreement to purchase the property by way of the March 25, 2008 letter. Therefore, according to Walmart, Saminvest's November 20, 2014 third-party complaint was filed outside of the statute of limitations. Walmart submits that Samost's unsubstantiated testimony contrary to the documentary evidence in the record does not create a genuine issue of material fact to preclude summary judgment based on the statute of limitations.

---

[3] See N.J.S.A. 2A:14-1

A-3657-17T2

In opposition, Saminvest first argues that Walmart waived its appeal of the trial court's denial of summary judgment, because Walmart's notice of appeal ("NOA") did not identify or attach the March 3, 2017 order denying summary judgment, nor did Walmart's case information statement ("CIS") designate that order as part of the appeal. Therefore, Saminvest contends that the issues raised in Walmart's appellate brief are not properly before the court. As to the merits of the statute of limitations issue, Saminvest asserts that the earliest it could reasonably have discovered that Walmart disavowed Sitton's promise was in April 2009 after the Supreme Court denied the objectors' petition for certification. Saminvest also contends that Walmart concealed material facts that prevented the assertion of its fraud claims until after litigation commenced.

B.

We first address Saminvest's argument that the issues raised in Walmart's appellate brief are not properly before the court. Saminvest correctly notes that Walmart did not identify the March 3, 2017 order denying summary judgment in its NOA, attach the order to its NOA, or specifically designate that the order was being appealed in its CIS. Nonetheless, we reject Saminvest's argument because Walmart's NOA and CIS put Saminvest on sufficient notice that the

14

issue presented in this appeal is whether Saminvest's fraudulent misrepresentation claim was barred by the statute of limitations.

We may review orders not specifically indicated in a NOA, provided that the NOA and CIS give sufficient notice of the issues on appeal. See Silviera-Francisco v. Bd. of Educ. of Elizabeth, 224 N.J. 126, 141-43 (2016) (permitting review of an interlocutory agency decision not specifically indicated in the NOA because the CIS made clear that the appellant was challenging the interlocutory decision, and the respondent and the appellate panel had sufficient notice of the issue on appeal); Ahammed v. Logandro, 394 N.J. Super. 179, 187-88 (App. Div. 2007) (reviewing order not referenced in the NOA where the plaintiff's CIS made clear primary issue on appeal, and the two orders addressed the same legal issue); Synnex Corp. v. ADT Sec. Servs., Inc., 394 N.J. Super. 577, 588 (App. Div. 2007) (reviewing order not indicated in the NOA where "the text of [the CIS] clearly indicates that the [earlier order] is one of the primary issues presented by the appeal."); Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 461 (App. Div. 2002) (noting that where "the basis for the motion judge's ruling on [an order and a subsequent order] may be the same . . . , an appeal solely from [the subsequent order] may be sufficient for an appellate

review of the merits of the case, particularly where those issues are raised in the CIS.").[4]

In this case, Walmart indicated in its CIS that the issue on appeal was: "Is Third-Party Plaintiff Saminvest Co., LLC's claim for fraudulent misrepresentation barred by [N.J.S.A.] 2A:14-1?" In the statement of facts and procedural history in the CIS, Walmart noted that the trial court denied its motion for summary judgment based on the statute of limitations defense. Walmart also requested the transcript for the summary judgment motion hearing.

Moreover, while moving for a directed verdict during trial, Walmart's counsel explicitly noted he was renewing the statute of limitations argument previously raised in the summary judgment motion, and the trial court denied the motions on substantially the same grounds. In this regard, the information contained in the CIS makes clear that Walmart was challenging the final judgment based on the trial court's interlocutory rulings on the motion for summary judgment and the motion for a directed verdict. See Sutter v. Horizon Blue Cross Blue Shield of N.J., 406 N.J. Super. 86, 106 (App. Div. 2009) ("'An appeal from a final judgment raises the validity of all interlocutory orders'

_____

[4] We note that the better practice is to specifically identify all orders implicated by the appeal in the NOA and CIS. See Silviera-Francisco, 224 N.J. at 143; Fusco, 349 N.J. Super. at 461 n.1.

previously entered in the trial court." (quoting In re Carton, 48 N.J. 9, 15 (1966))).

For these reasons, we conclude that Walmart's NOA and CIS provided sufficient notice that it was challenging the trial court's order denying summary judgment, as well as the court's denial of Walmart's motion for directed verdict during trial. Therefore, we reject Saminvest's argument that the issues raised in Walmart's appellate brief are not properly before us.

C.

We next turn to Walmart's argument that Saminvest's fraudulent misrepresentation claim was barred by the statute of limitations. Initially, Walmart points out the Saminvest alleged that Sitton made an oral promise to Samost in the fall of 2007, but Saminvest did not file suit until over seven years later in November 2014 – which would be outside of N.J.S.A. 2A:14-1's six-year statute of limitations. The parties, however, dispute whether the discovery rule tolled the statute of limitations such that Saminvest's complaint was timely filed.

The discovery rule is an equitable doctrine which tolls the accrual of the statute of limitations "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have

17

a basis for an actionable claim." Lopez v. Swyer, 62 N.J. 267, 272 (1973). In Lopez, the Supreme Court held "that whenever a plaintiff claims a right to relief from the bar of the statute of limitations by virtue of the so-called 'discovery' rule, the question as to whether such relief is properly available shall be deemed an issue for determination by the court rather than by the jury." Ibid.

The Court outlined procedures and standards for a trial court to apply in making a discovery rule determination:

> The determination by the judge should ordinarily be made at a preliminary hearing and out of the presence of the jury. Generally the issue will not be resolved on affidavits or depositions since demeanor may be an important factor where credibility is significant. Where credibility is not involved, affidavits, with or without depositions, may suffice; it is for the trial judge to decide. The issue will be whether or not a party, either plaintiff or counterclaimant, is equitably entitled to the benefit of the discovery rule. All relevant facts and circumstances should be considered. The determinative factors may include but need not be limited to: the nature of the alleged injury, the availability of witnesses and written evidence, the length of time that has elapsed since the alleged wrongdoing, whether the delay has been to any extent deliberate or intentional, whether the delay may be said to have peculiarly or unusually prejudiced the defendant. The burden of proof will rest upon the party claiming the indulgence of the rule.
>
> [Id. at 275-76 (footnotes omitted).]

The Court also noted:

In an appropriate case, however, where it can be foreseen that much the same evidence will be adduced at the trial itself as upon the statute of limitations issue, the judge may elect to go forward with the trial, receiving the evidence and ruling upon the limitations issue at the end of the plaintiff's case or after all proofs are in, as may be appropriate.

[Id. at 275 n.3.]

In this case, the court appropriately exercised its discretion under Lopez when it declined to definitively rule on the statute of limitations issue when adjudicating Walmart's motion for summary judgment prior to trial. The record does not reveal that either party requested a Lopez hearing in relation to Walmart's motion for summary judgment.[5] Moreover, the trial court aptly identified circumstantial evidence to be presented at trial that would support a conclusion that Saminvest's complaint was filed within the statute of limitations.

---

[5] In making the motion for a directed verdict at the close of Saminvest's case in chief, however, Walmart counsel stated:

As a preliminary matter, I understand that -- that the courts typically do on a limitations basis what's called a Lopez hearing. And that in certain circumstances, in conducting a Lopez hearing, which we're requesting, for the record, evidence will be accepted by the Judge that you feel is pertinent or relevant. I think that we have that evidence through the testimony in the plaintiff's case, however disputed it may be.

Although the trial court mistakenly suggested that the jury would make the determination of when Saminvest reasonably should have known that Walmart was disavowing its promise, we detect no error in the trial court's denial of Walmart's motion for summary judgment and decision to proceed to trial.

Nonetheless, we are constrained to remand because the trial court did definitively resolve the discovery rule issue after hearing all the evidence presented at trial. Although the trial court placed analysis on the record with respect to some of the factors annunciated in Lopez in denying Walmart's motion for a directed verdict at the close of Walmart's case-in-chief, the court explicitly declined to make credibility determinations, and assessed the evidence in the light most favorable to Saminvest in terms of what a reasonable jury could infer. This approach was inconsistent with Lopez's mandate that the court make a determination on the discovery rule, and if necessary assess credibility, prior to the case being submitted to the jury for a verdict. See id. at 275-76; see also Walker v. Choudhary, 425 N.J. Super. 135, 145 (App. Div. 2012) ("It is well-settled that a judge is in the best position to most equitably consider the issue of fairness with regard to when the statute of limitations accrues and when defendants have knowledge of the litigation.").

For these reasons, we remand this matter to the trial court to issue a ruling on when plaintiff's action accrued for purposes of the discovery rule. In ordering this remand, we are mindful that the testimony and evidence relevant to the discovery rule issue has already been presented at trial. Indeed, in their appellate briefs, both parties identify evidence presented at trial in support of their positions on the accrual issue. Because all the relevant evidence needed to make this determination is already present in the trial record, we direct the trial court to issue findings based upon the trial record, rather than holding a new Lopez hearing on remand. In making its decision whether plaintiff is entitled to the benefit of the discovery rule, the trial court shall make credibility assessments[6] and issue factual findings as to the date Saminvest knew or should have known it had a cause of action for fraudulent misrepresentation.[7]

Remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6]  Because resolution of this issue requires credibility determinations, the matter should be remanded to the judge who presided over the trial.

[7]  The trial court need not analyze the tolling issue with respect to all of Saminvest's causes of action, as the jury found for Saminvest only as to the fraudulent misrepresentation claim.

A-3657-17T2