**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0507-22

ANNA MARIE SOTO,

     Petitioner-Respondent,

v.

HOOSIER CARE, INC.,

     Respondent-Appellant.

_____

Argued November 14, 2023 – Decided December 11, 2023

Before Judges Smith and Perez Friscia.

On appeal from the Division of Workers' Compensation, Department of Labor and Workforce Development, Claim Petition No. 2018-13546.

Rachel M. Planas argued the cause for appellant (Litchfield Cavo LLP, attorneys; Rachel M. Planas, on the briefs).

Ralph F. Fedele argued the cause for respondent (Silvi, Fedele & Honschke, LLC, attorneys; Ralph F. Fedele, on the brief).

PER CURIAM

Hoosier Care Inc. appeals from the August 31, 2022 and October 14, 2022 Department of Labor Workforce Development, Division of Workers' Compensation (Division), orders, which granted petitioner Anna Marie Soto's application for temporary total disability benefits and denied reconsideration, respectively. Following our review of the record and applicable legal standards, we affirm.

I.

On April 21, 2018, Soto was injured while working as a Certified Nursing Assistant (CNA) for Hoosier when a picture frame fell from a wall onto her. Approximately one month later, Soto filed a workers' compensation claim petition alleging she suffered injuries to her neck, head, back, and shoulder. Soto was evaluated and received medical treatment from Joel Goldstein, M.D. Thereafter, Soto received a second opinion regarding her medical condition from Kristen E. Radcliff, M.D., who opined she could work without restrictions. Soto returned to work for Hoosier four months later.

On March 17, 2021, Soto's claim was settled, approved by a workers' compensation judge, and memorialized in an order, which provided that Soto had a 25% partial total permanent disability, apportioned as 15% cervical and 10% right shoulder. Soto's permanency award was $274.60 per week in wages.

2

The agreement acknowledged Soto's statutory "re-opener" rights, providing she had "two years from the date [she] receive[d her] final settlement check to seek additional medical care benefits, including an increase in . . . permanent or temporary disability."

In 2018, after she had returned to work from her injury, Soto changed employment to work for Complete Care as a CNA. Thereafter, she also began working for Interim Agency as a home health aide in the fall of 2019. At the onset of the COVID-19 pandemic, Soto voluntarily left her employment with Complete Care "due to fears of getting [COVID-19] because [she had] an immune compromised child," but she continued working for Interim Agency. In the fall of 2020, Soto enrolled in a "quick semester" at Ocean County College. Around November 2020, she increased her hours from approximately fifteen hours a week to twenty-five hours a week.

In July 2021, Soto lost her employment because Interim Agency closed. The following month, Soto obtained a temporary one-week job with Lars Home Care Services. Thereafter, in September 2021, Soto applied for unemployment benefits and received payments until April 14, 2022. While collecting unemployment, Soto certified weekly that she was seeking employment and had located two private duty nursing positions. However, she was unable to begin

employment because one patient passed away and the other was placed in a nursing home. Soto remained a full-time student at Ocean County College while continuing her search for employment.

In March 2022, Soto filed an application for a review or modification of her compensation award before the Division. Soto averred she suffered from more frequent headaches, had limited neck range of motion with "more intense" pain, and had worsened shoulder range of motion. Dr. Radcliff again examined Soto, reviewed her prior MRIs, and ordered x-rays. After reviewing the x-rays, he opined Soto had a C5-C6 disc collapse, causing the following cervical sequalae: "[a]cute radiculopathy," "[c]ervicalgia," "spondylolisthesis," "spinal instabilities," "myelopathy;" and "[b]rachial neurit due to a displace[d] cervic intervert disc." As to causality, Dr. Radcliff found within a reasonable degree of medical certainty, "the work injury 4/21/2018 was a material contributing factor to the [causation] of the patient[']s diagnosis." He recommended she undergo "an MRI of the cervical spine," and provided the necessary treatment was likely an anterior cervical discectomy and fusion "surgery at C4[-]5 and

C5[-]6." He concluded that her status was "[o]ut of work." Soto continued treatment with Dr. Radcliff.[1]

On May 13, 2022, Soto moved for temporary disability and medical benefits. Hoosier agreed to provide medical benefits but opposed temporary disability benefits. After a hearing in which Soto testified, the compensation judge ordered temporary disability benefits to Soto beginning April 15, 2022. On the same day, in an oral decision, the judge found that Soto was "extremely credible." The judge recognized: "she was working and going to college at the same time"; "her employer [Interim Agency] closed"; "she went for unemployment benefits"; and "at no time did [she] ever leave the work force." The judge specifically found Soto did not "voluntarily leave the workforce."

Hoosier thereafter moved for reconsideration of the award and alternatively requested a stay of the decision. On September 30, 2022, after hearing arguments, the judge denied the motion and the stay in an oral decision

---

[1] Soto provided an appendix with exhibits Hoosier alleges were not provided before the workers' compensation judge at the hearing and, thus, should not be considered on appeal. We note the compensation judge, in his September 30, 2022 amplification statement, considered the records in dispute. We have not considered the disputed exhibits as it is unclear which, if any, of the exhibits in question were provided with the motion and at the hearing. See Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (recognizing material that is not presented to a trial court is inappropriate for consideration on appeal).

on the record. On the same day, but prior to argument, the judge had issued an amplification of his prior decision. The judge reiterated that Soto: became unemployed because her employer closed; sought employment while collecting unemployment benefits; attended college; and could not to work because of injuries causally related to her 2018 work accident, as Dr. Radcliff found.

## II.

In its appeal, Hoosier argues the judge's decision was erroneous because: Soto failed to meet "her burden of proof that she was entitled to temporary total disability benefits"; reliance on the COVID-19 pandemic and related unemployment assistance was misplaced; reliance on unpublished decisions was improper; Soto "removed herself from the workforce" to attend college; hearsay was wrongly relied on; and finding that Soto was credible is unsupported by the record.

We adhere to the following principles to guide our analysis. "Deference must be accorded [to] the factual findings and legal determinations made by [a] Judge of Compensation unless they are 'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'" Lapsley v. Township of Sparta, 249 N.J. 427, 434 (2022) (first alteration in original) (quoting Lindquist v. City of Jersey City

Fire Dep't, 175 N.J. 244, 262 (2003)). Our Supreme Court has recognized a "compensation judge's expertise" in hearing applications for benefits. Goulding v. NJ Friendship House, Inc., 245 N.J. 157, 167 (2021).

Our review of a workers' compensation decision is limited to "'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge their credibility." Lapsley, 249 N.J. at 434 (quoting Earl v. Johnson & Johnson, 158 N.J. 155, 161 (1999)). We reverse a compensation judge's findings if "they are 'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'" McGory v. SLS Landscaping, 463 N.J. Super. 437, 452 (App. Div. 2020) (quoting Lindquist, 175 N.J. at 262). We owe no deference to a compensation judge's legal conclusions or statutory construction and, consequently, review those issues de novo. Hager v. M&K Constr., 246 N.J. 1, 18 (2021).

The Workers' Compensation Act (the Act), N.J.S.A. 34:15-1 to -147, compensates employees for personal injuries caused "by accident[s] arising out of and in the course of employment." N.J.S.A. 34:15-7. Recovery under the Act is "the exclusive remedy for an employee who sustains an injury in an

accident that arises out of and in the course of employment." <u>McDaniel v. Man Wai Lee</u>, 419 N.J. Super. 482, 490 (App. Div. 2011) (quoting <u>Ahammed v. Logandro</u>, 394 N.J. Super. 179, 190 (App. Div. 2007)).  The Act "provide[s] a method of compensation for the injury or death of an employee, irrespective of the fault of the employer or contributory negligence and assumption of risk of the employee." <u>Harris v. Branin Transp., Inc.</u>, 312 N.J. Super. 38, 46 (App. Div. 1998) (citing <u>Seltzer v. Isaacson</u>, 147 N.J. Super. 308, 313 (App. Div. 1977)).  Under the Act, an employer must furnish an injured worker with the medical treatment and services necessary "to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member." N.J.S.A. 34:15-15.

Temporary disability benefits "provide an individual who suffers a work-related injury with a 'partial substitute for loss of current wages.'" <u>Cunningham v. Atl. States Cast Iron Pipe Co.</u>, 386 N.J. Super. 423, 428 (App. Div. 2006) (quoting <u>Ort v. Taylor-Wharton Co.</u>, 47 N.J. 198, 208 (1966)).  After a compensation award has been issued, an application to re-open the award may be filed within two years from the "last received . . . payment on the ground that the incapacity of the injured employee has subsequently increased." N.J.S.A. 34:15-27.

Soto timely reopened her partial total disability award within two years of her March 2021 award, claiming worsened neck and shoulder injuries. Hoosier, however, argues Soto did not meet her burden of proof to demonstrate "entitle[ment] to temporary total disability benefits" because she was unemployed at the time of her application, and failed to prove that she would have been working "but-for the work-related disability." We conclude Hoosier's argument is without merit. It is undisputed that Soto maintained employment from 2019 until the summer of 2021. As the compensation judge found, Soto "work[ed] two jobs after the accident with Hoosier." The judge specifically determined Soto became unemployed because her employer, Interim Agency, went out of business in July 2021. Thereafter, she collected unemployment benefits from September 2021 to April 2022, and certified weekly to searching for employment. At the time of Soto's March 2022 application to reopen her compensation award, she was still collecting unemployment benefits and searching for a position. The judge's finding that, "but for [Soto's] work-related injury[,] she would have been working elsewhere" is sufficiently supported by the record.

While Hoosier relies heavily on Soto's college matriculation to argue voluntary unemployment, college attendance alone is not dispositive of her

employment status. Soto testified that she started school in the fall of 2020, continued to work while in school, and continued to seek employment while in school. The judge had the opportunity to access Soto's testimony and determined she was credible. As the judge correctly acknowledged, people can and do work full-time and go to school. The judge found Soto's "sole reason" for being "unable to work" was her April 2018 "work-related injury." Thus, she met "the burden of proof to establish all elements of [the] case." See Bird v. Somerset Hills Country Club, 309 N.J. Super. 517, 521 (App. Div. 1998). After a detailed review of the record, we discern no reason to disturb the judge's finding that Soto was entitled to temporary disability benefits.

We also find no merit in Hoosier's argument that Soto "did not intend to seek work until after her" spring college semester as this assertion is unsupported by the record. The record supports the judge's determination that Soto established "not only that [she] was available and willing to work, but that [she] would have been working if not for the disability." See Cunningham, 386 N.J. Super. at 432. Soto had worked and attended college until her involuntary unemployment when Interim Agency closed. As Cunningham makes clear, the requisite wage loss "need not be continuous from the initial onset of the

disability period," nor be "derive[d] from wages lost from the job on which the injury occurred." Id. at 430.

Hoosier's reliance on Tamecki v. Johns-Manville Products Corporation, 125 N.J. Super. 355 (App. Div. 1973) is misplaced. The facts here are distinguishable from Tamecki, which involved a college student who was injured during a temporary summer position and received disability benefits until his return to school. Id. at 357. Here, the judge found Soto credibly testified that her college studies did not change her involuntary unemployment status and that she "suffer[ed] loss of wages as a direct result of [her] compensable injury." See id. at 360.

Unquestionably, Dr. Radcliff determined, within a reasonable degree of medical certainty, Soto's worsened injuries were causally related to her April 2018 work accident at Hoosier. A petitioner "must prove both legal and medical causation when those issues are contested." Lindquist, 175 N.J. at 259. Soto established that Dr. Radcliff concluded her status related to the injury was "[o]ut of work" and her likely treatment required a cervical discectomy and fusion. We observe the Act is to be liberally construed in favor of employees. See Kocanowski v. Township of Bridgewater, 237 N.J. 3, 10 (2019). We are also "mindful [that] 'the legislative policy'" is to afford "coverage to as many

workers as possible." Goulding, 245 N.J. at 173 (quoting Brower v. ICT Grp., 164 N.J. 367, 373 (2000)).

Further, Hoosier's argument that the compensation judge erred in relying on the pandemic to conclude "it did not matter if [Soto] was working or not working" misstates the judge's references to the pandemic and the available related unemployment assistance. The judge's acknowledgement of COVID-19 employment difficulties, and that unemployment benefits were "cut off constantly," was not the basis for the judge's finding that Soto was involuntarily unemployed, sought reemployment while in school, medically demonstrated causally related injuries to her 2018 work accident, and was not working due to worsened injuries.

Hoosier's contention that reversal is warranted because the judge improperly relied on unpublished case law is also without merit. Although the judge referenced two unpublished opinions, which he found persuasive, he acknowledged in a footnote in his amplification of reasons that he recognized, pursuant to Rule 1:36-3, "[n]o unpublished opinion shall constitute binding precedent."

Finally, we disagree with Hoosier's assertion that the judge improperly relied on hearsay evidence. Hoosier argues that despite objection, the judge

permitted Soto to testify that "Dr. Radcliff told her that she should not work." A workers' compensation judge "conducting the hearing shall not be bound by the rules of evidence." N.J.S.A. 34:15-56. We observe "hearsay evidence need not be excluded," but "the ultimate award must be based on legally competent evidence." Gunter v. Fischer Sci. Am., 193 N.J. Super. 688, 691 (App. Div. 1984) (citing Gilligan v. Int'l Paper Co., 24 N.J. 230, 236 (1957)). The judge properly considered Dr. Radcliff's uncontested report, submitted with Soto's motion, finding that it supported Soto's claim because he "took [her] out of work on" April 7, 2022, based on work related injuries. We conclude the judge's decision was "based on legally competent evidence." See ibid.

To the extent we have not addressed any of Hoosier's remaining arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION